DAVID J. SACKS, P.C. d/b/a Sacks & Associates, Petitioner,

v.

Charles McIntyre HADEN, Jr., Individually, and Charles McIntyre Haden, Jr. & Company d/b/a Haden & Company, Respondents.

No. 07–0472.

Supreme Court of Texas.

Sept. 26, 2008.

David J. Sacks, pro se, Kristen Aldridge Black, Sacks Law Firm, David W. Holman, The Holman Law Firm, P.C., Houston, TX, for Petitioner.

Richard N. Countiss, Countiss Law Firm, Arnold G. Polanco, Ross, Banks, May, Cron & Cavin, Houston, TX, Douglas W. Alexander, Alexander Dubose Jones & Townsend LLP, Austin, TX, for Respondents.

PER CURIAM.

The question in this case is whether a written attorney's fee agreement that specifies only hourly fee rates may be modified by evidence of an oral capping agreement. We hold that it may not because parol evidence cannot modify a written agreement absent ambiguity. Accordingly, we reverse the court of appeals' judgment and remand the case to the court of appeals for consideration of other issues raised on appeal.

Haden & Company and its owner, Charles Haden, were involved in a lawsuit that was appealed to the federal circuit court of appeals. Haden hired David Sacks as his appellate counsel. The parties signed a written engagement letter prepared by Sacks. The letter stated the following:

I am honored to represent you with regard to the above-referenced matter. At this point, you have requested that I

assist with the writing of the Appellants' Brief and any reply. If oral arguments are granted by the Fifth Circuit, a decision will have to be made on who should argue the case.

My normal rate is $300.00 per hour, but my rate for this particular matter will be $200.00 per hour. The other lawyers in my firm range from $150.00 to $200.00 per hour, and paralegals range from $50.00 to $100.00 per hour. You are responsible for all costs and expenses in the case as incurred. These expenses include, but are not limited to, copies; binding; fax transmissions; travel; lodging; parking; etc.

Please submit a $10,000 retainer to be applied to fees and expenses.

Sacks's signature appears at the close of the letter. Below Sacks's signature is the statement, "Your signature below indicates acceptance of the terms of this fee agreement." The parties later agreed to change the amount of the retainer, and the face of the engagement letter shows that Haden signed the agreement, making that change by striking through the original $10,000 amount and superscripting the amount of $5,000 above the original typewritten numerals in handwriting, adding his initials beside that change. Haden forwarded a check for the $5,000 retainer with a letter, which stated:

> Pursuant to our telephone conversation, enclosed herewith is a check in the amount of five thousand dollars ($5,000) to be applied to fees and expenses in assisting with the writing of the Appellants' Brief and reply. Also enclosed is an executed copy of your August 4, 1997 letter indicating that I have acknowledged acceptance of the terms of your fee agreement on behalf of Haden & Company and myself, except that the initial retainer amount has been reduced to $5,000 per our agreement.

Sacks then filed a brief on behalf of Haden and his company seeking relief from the trial court's judgment. Sacks sent Haden an invoice for his legal services in the amount of $37,259.71, along with a letter stating that, "given the state of the record as we were eventually able to retrieve from the Court, putting together winning arguments took considerabl[y] more time than I anticipated after giving the cursory review of the initial documents." The letter also said, "We are committed to excellence and will generally spend whatever time is necessary to develop a winning brief given the state of the record. Sometimes that gets a little more expensive than anticipated."

After Haden's opponent's responsive brief was received, Sacks prepared and filed Haden's reply brief. Sacks later sent Haden another invoice showing $40,304.71 in total charges for both the appellant's brief and the reply brief, crediting Haden $5,000 for the retainer, and requesting payment of the outstanding balance of $35,304.71. Haden paid Sacks only an additional $5,000.

Over the next two years, Sacks continued to request payment of the remaining amount but Haden contested the fees owed, stating that Sacks was only to review the brief already drafted by his trial counsel and maintaining that Haden had "made it clear" that $5,000 was all he could afford to spend. Sacks disputed Haden's assertions and filed this lawsuit.

The trial court rendered a partial summary judgment in favor of Sacks on his breach of contract claims, awarding Sacks the fees accrued preparing the briefs for Haden plus interest. The trial court also ruled that Sacks was entitled to attorney's fees incurred in pursuing the contract claim, but reserved ruling on the amount of reasonable attorney's fees. In addition, the trial court rendered a preliminary

take-nothing summary judgment in favor of Sacks on Haden's counterclaims for unconscionable action, fraud, violations of the Deceptive Trade Practices Act, breach of fiduciary duty, and breach of contract.

Sacks next sought summary judgment on the reasonableness of the attorney's fees he incurred in seeking summary judgment on his breach of contract claim. The trial court then rendered a final judgment, which incorporated the earlier ruling on the contract claim, and awarded Sacks an additional $75,887.50 for attorney's fees incurred in pursuing his claim on the original fee agreement, with contingent fees totaling $45,000 for appeals to an intermediate appellate court and for filing a petition for review in this Court.

Reviewing the trial court's grant of summary judgment, the court of appeals initially unanimously affirmed. On rehearing, the court reversed the trial court in a 2–1 decision, holding that a fact question existed with respect to whether there was a meeting of the minds between the parties when they entered into the fee agreement. 222 S.W.3d 580, 590–91 (Tex.App.–Houston [1st Dist.] 2007). Because the agreement did not explicitly state whether the parties had agreed to an open account or a flat, maximum fee, the court of appeals concluded that Haden's evidence of an oral agreement to cap the attorney's fees at $10,000 was admissible as a defense to Sacks's claim under the collateral and consistent exception to the parol evidence rule. *Id.* at 592–93.

■ The court of appeals raised meeting of the minds sua sponte, concluding that in the absence of a clear statement identifying the fee agreement as an open account, a question of fact was raised as to whether "the minds of the parties 'met' on the crucial obligation." *Id.* at 591. A meeting of the minds is necessary to form a binding contract. *E.g., Hathaway*

*v. General Mills, Inc.,* 711 S.W.2d 227, 228 (Tex.1986). However, the absence of a fixed total price for services does not indicate a failure of the parties to reach a meeting of the minds with regard to the essential terms of the contract. *See Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.,* 480 S.W.2d 607, 609 (Tex.1972); *Buxani v. Nussbaum,* 940 S.W.2d 350, 352–53 (Tex.App.–San Antonio 1997, no pet.). "Where the parties have done everything else necessary to make a binding agreement for the sale of goods or services, their failure to specify the price does not leave the contract so incomplete that it cannot be enforced. In such a case it will be presumed that a reasonable price was intended." *Bendalin v. Delgado,* 406 S.W.2d 897, 900 (Tex.1966); *see also Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.,* 113 S.W.3d 889, 894–95 (Tex.App.–Dallas 2003, no pet.); *Buxani,* 940 S.W.2d at 353; *Pennington v. Gurkoff,* 899 S.W.2d 767, 770 (Tex.App.–Fort Worth 1995, writ denied). Though Sacks did not specify an exact total price for his services, the specified hourly rates confirm that the parties agreed that Sacks would charge and Haden would pay a reasonable price. The contract was explicit as to the services to be rendered and the manner that would be used in determining the price, and was therefore sufficiently clear to demonstrate a meeting of the minds between the parties as to all essential terms of the contract.

■ An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports. *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951). Only where a contract is ambiguous may a court consider the parties' interpretation and "admit

extraneous evidence to determine the true meaning of the instrument." *Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex. 1995) (per curiam). "Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996). The plain language of the engagement letter demonstrates that Haden agreed to pay Sacks an hourly fee, and that no cap on fees was set. Haden argues that a fee agreement must specifically state that hourly fees will accrue without limit in order for the agreement to be unambiguous and enforceable. But the lack of such explicit language is irrelevant if the agreement can be reasonably interpreted only one way. *See id.* at 591. We have never held that an open-ended hourly fee agreement will be enforced only if it expressly states there is no cap on fees, and we decline to do so now. If a contract is unambiguous, the parol evidence rule precludes consideration of evidence of prior or contemporaneous agreements unless an exception to the parol evidence rule applies. *See Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30, 31 (1958).

 Haden argues that the collateral and consistent exception applies. Under the exception, parol evidence can be used to demonstrate a prior or contemporaneous agreement that is both collateral to and consistent with a binding agreement, and that does not vary or contradict the agreement's express or implied terms or obligations. *Id.* But "[a] previous or simultaneous agreement to alter the fee agreed upon in a written contract is in conflict with the written contract and not merely collateral to it." *Lakeway Co. v. Leon Howard, Inc.,* 585 S.W.2d 660, 662 (Tex.1979) (per curiam); *see also Rincones v. Windberg,* 705 S.W.2d 846, 849 (Tex. App.–Austin 1986, no writ) ("It is a fair conclusion, we think, that the parol evidence rule prohibits the admission of oral evidence which alters the payment terms of a written contract."). The evidence offered by Haden would alter the written fee agreement, and is therefore not admissible under the collateral and consistent exception to the parol evidence rule.

The court of appeals erred in holding that there was no meeting of the minds necessary to form a binding contract, and erred in holding that the parol evidence rule did not bar Haden's evidence of an oral agreement to cap fees. Accordingly, we grant Sacks's petition for review and, without hearing oral argument, *see* Tex. R.App. P. 59. 1, reverse the court of appeals' judgment and render judgment that the trial court's judgment with respect to the admissibility of parol evidence be reinstated. We remand the case to the court of appeals for consideration of other issues raised on appeal.