# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00537-CV

**Patricia Gordon Stark, Appellant**

**v.**

**Fernando H. Loya, Rebecca L. Loya, Timothy J. Myers, and Lisa G. Myers, Appellees**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT NO. 26,369, HONORABLE REVA TOWSLEE-CORBETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal concerns the scope of an access easement created in a decree partitioning land. Appellant Patricia Gordon Stark, the owner of the partitioned tract of land burdened by the easement, appeals the district court's declaration that appellees Fernando H. Loya, Rebecca L. Loya, Timothy J. Myers, and Lisa G. Myers, as the owners of the land bordering Stark's tract, are beneficiaries of the access easement. In three issues, Stark contends that the district court erred by allowing parol evidence and submitting a question to the jury on the intent of the drafters of the partition decree because the decree unambiguously created the access easement for the sole benefit of the parties in the partition suit. For the reasons that follow, we affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

The land subject to the partition suit was owned in undivided interests by members of the Kellough family (the "Kellough property"). Prior to the partition, the Kellough property was served by a single public road, Pecan Acres Road. Pecan Acres Road ended on the Kellough property's northern boundary line and was connected to an "existing road" that crossed the Kellough property and provided access to appellees' property. Appellees' property is located on the southern boundary and, at the time of the partition decree, was owned by Oscar Davis and his wife.

Charles Kellough, one of the owners of an undivided interest in the Kellough property, petitioned the district court to partition and equally divide the property among the family members with undivided interests. The district court appointed commissioners to partition the land and a surveyor to assist with the partition. After the commissioners filed their report with the court and with the agreement of the parties, the district court entered its partition decree confirming the commissioners' report. The decree was executed and recorded in the real property records of Bastrop County in October 1989.

The partition decree states in relevant part:

> That each party to whom a share has been allotted by the report above set forth shall be vested, as against the other parties hereto, with fee simple title in both the surface and mineral estates to the property thus allotted to him or her as described in the report and the exhibits attached thereto, and hereby confirmed such exhibits being attached hereto and made a part hereof and shown herein as Exhibits "A", "B", and "C", and all of such tracts being subject to easements as described in the plats above described and attached hereto for ingress and egress roadway and utility purposes.

2

Attached to the partition decree and recorded in the real property records were (i) the field notes[1] for a thirty-foot wide easement and a sixty-foot wide easement, and (ii) a survey plat identifying the location of the partitioned tracts, the easements, and appellees' property.[2] The thirty-foot wide easement follows a cattle path that crosses through the partitioned tracts numbers 3 and 4 (the "cattle path easement").[3] Charles Kellough granted and recorded in the real property records of Bastrop County the cattle path easement for "right-of-way" in December 1989 to Davis and his wife, as the owners at the time of appellees' property. The easement was for "the purposes of vehicular and pedestrian travel, for maintaining, rebuilding or replacing the roadway to be constructed by Grantees within the Right-of-Way Easement, and for public utilities, of what ever kind or character in the sole discretion of the Grantees." The sixty-foot wide easement follows the perimeter of six of the partitioned tracts of land, providing access from Pecan Acres Road to each tract and to appellees' property (the "perimeter easement"). The portion of the perimeter easement in dispute runs along the boundary line between the partitioned tracts 3 and 4, encumbering thirty feet on each side of the boundary line between the two tracts and extending to the boundary line with appellees' property.[4]

---

[1] Gary Reynolds, an attorney that testified at trial, testified that field notes refer to the metes and bounds description of property.

[2] The survey plat and field notes identify the land on the southern boundary of the Kellough property as "Oscar A. Davis 172 acre tract."

[3] Stark does not dispute that appellees were beneficiaries of the cattle path easement and has not appealed the portion of the final judgment concerning that easement. Appellee Timothy Myers testified at trial that, unless a bridge was built, appellees' land was accessible only through the cattle path easement or the perimeter easement.

[4] The portion of the perimeter easement burdening tract 4 was not at issue in this suit.

3

Stark purchased tract 3 of the partitioned tracts in 1996,[5] and appellees purchased the land formerly owned by Davis and his wife in October 2006. By agreement with the owner of the land at the time, Amanda Roth, the land was "split [ ] down the middle," with the Loyas and Myers each receiving a separate deed for their half of the land. Shortly after appellees purchased their land, they began clearing and developing the perimeter easement so that it could be used to access their property as an alternative to the cattle path easement. Stark thereafter filed this suit, seeking injunctive relief and damages for trespass, contending that appellees were not beneficiaries of the perimeter easement. Appellees filed a counterclaim, including seeking declaratory relief that they were beneficiaries of the perimeter easement.

The case proceeded to a jury trial in July 2008. Stark and her husband testified on her behalf.[6] Stark testified to her interactions with appellees, appellees' "bulldozing" in the perimeter easement without her permission, the loss of trees and other damage from the bulldozing, and her understanding of the beneficiaries of the perimeter easement. She testified that no individual had attempted to use the perimeter easement on tract 3 of the partitioned tracts prior to appellees and that appellees' means to access their property was the cattle path easement. When asked during cross examination if the perimeter easement exists today, she testified that "[o]n paper it does. I mean it's drawn out on the survey," but she testified that only "heirs to the Kellough estate" had the right to use it. Mr. Stark testified to the number of trees that appellees destroyed in the perimeter easement

---

[5] Stark purchased other tracts from the partitioned land that are not at issue, and tract 3 of the partitioned land is titled in the assumed name of her business, except for a five-acre parcel that is titled in her individual name.

[6] Mr. Stark, who was a third-party defendant, has not appealed the final judgment.

and the time that he spent because of appellees' actions, including his efforts to recover lost cattle from downed fences.

Witnesses to testify for appellees included the Myers; the Loyas; Gary Reynolds and Allen McMurrey, attorneys that represented parties in the partition suit; Dale Olson, the surveyor and one of the commissioners in the partition suit; Tammy and Amanda Roth, prior owners of appellees' property; and William Rivers, a title examiner expert. Timothy Myers testified to the circumstances surrounding appellees' purchase of their property, that appellees discovered the perimeter easement at the closing on their property, that Stark initially agreed to appellees' developing the perimeter easement, and that appellees did not intend to use the cattle path easement after the perimeter easement was developed. Fernando Loya testified consistently that appellees first learned of the perimeter easement at their closing and that, when they approached Stark about developing the easement, she said "anything to improve the land." He also testified that Mr. Stark initially assisted with the development of the perimeter easement. Rebecca Loya and Lisa Myers testified to an incident with Stark in which they felt threatened.

Reynolds, McMurrey, and Olson testified to their respective involvement with the partition suit and understanding concerning the portion of the perimeter easement located on the boundary line between tracts 3 and 4 of the partitioned land. Reynolds testified that, based on his memory and understanding that the reason this portion of the perimeter easement was created was to provide a "more direct route" to appellees' property:

> Well, as I testified when you took my deposition, there is a road, an old pasture road, . . . that zigs across those two Tracts, 3 and 4. And my memory was, that it just made sense to try to put an easement right down between the two tracts so that it wouldn't

unnecessarily infringe on either of the tracts anymore so than necessary. And I do recall that we had discussions about that and it was agreed that that's where the easement would be.

* * *

It's been a long time ago but I believe that the people that lived to the south had been using that [old pasture] road. I certainly don't know for how long, but it was in use at that time. The idea was simply to provide a more direct route to access that property.

Consistently, McMurrey testified that the perimeter easement was to provide access to appellees' property, and Olson testified that the portion of the perimeter easement between tracts 3 and 4 was to provide access to appellees' property and the "purpose of that easement was to eliminate the crooked driveway going down there, which crosses the property line several times, and to put it along the property line."

Tammy Roth testified concerning her purchase of appellees' property from Davis and the subsequent sale to Amanda Roth, to difficulties that she had with Stark concerning access to her property, and to a lawsuit between herself and Stark concerning the cattle path easement. Amanda Roth also testified to her difficulties with Stark concerning access to her property and to her sale of the property to appellees in 2006. William Rivers testified to his examination of appellees' title that included, in his opinion, appellees' right to use the perimeter easement. He opined that the reason for the perimeter easement on tracts 3 and 4 was to provide access to appellees' property and to "clean up title on the squiggly easement." Rivers also testified to contact that he had with Stark, including that he declined to remove the perimeter easement from the

6

exceptions on her title policy concerning tract 3 because, in his opinion, her property was encumbered by the easement.

The district court's submission to the jury included a question on the intent of the perimeter easement:

> Do you find from a preponderance of the evidence that the 60-foot access easement created in the Kellough family partition was also intended to provide access to the Oscar Davis property now owned by the Myers and the Loyas?

The jury answered this question "Yes." The district court thereafter entered judgment in favor of appellees.[7]

In the judgment, the district court declared that, as owners of the bordering land, appellees are beneficiaries of the perimeter easement,

> shown on the partition plat . . . and described in the field notes . . . and set forth in the Final Decree Confirming Report of Commissioners in Partition and Vesting Title . . . , which Perimeter Easement is appurtenant to [appellees'] [p]roperty and which Perimeter Easement crosses and burdens that certain 17.80-acre tract in Bastrop County, Texas owned by [the Starks], which 17.80-acre tract is called Tract No. 3 in the Kellough Partition Decree . . . and [appellees], as owners of the [property] are entitled to the free and uninterrupted use of the Perimeter Easement for pedestrian and vehicular ingress and egress to and from Pecan Acres Road, which is a county road and public right-of-way, and [appellees'] Property and for utility purposes.

---

[7] The jury also found that Stark "unreasonably interfered with the easement rights of the Myers and the Loyas," that the harm to the Myers and the Loyas "resulted from malice" by Stark, and awarded exemplary damages of $25,000 to the Myers and $25,000 to the Loyas. The district court did not award exemplary damages to appellees in its final judgment, and they have not appealed the damages award.

The district court also awarded attorney's fees to appellees and enjoined the Starks from interfering with appellees' rights to use the easement. This appeal followed.

## ANALYSIS

Stark contends that the partition decree and the report of commissioners confirmed in the decree (collectively the "partition decree") are not ambiguous and that they only created rights as to the perimeter easement in favor of parties to the partition suit and not in favor of appellees who were non-parties. In her first and second issues, Stark contends that the district court erred in allowing parol evidence[8] to alter and expand the clear language of the partition decree and in submitting to the jury the intent of the perimeter easement. In her third issue, she contends that the proper interpretation of the express terms of the partition decree only supports that appellees, as non-parties, have no rights in the perimeter easement.

Stark's issues are dependent on her proposed interpretation of the partition decree. Stark relies on the language in the partition decree that "each party . . . shall be vested, as against the other parties hereto, with fee simple title" and on language in the report of commissioners that "each tract owner shall have access for roadway and utility purposes to each tract." She contends that the partition decree could not make appellees' property the dominant estate of an easement without Davis, the owner at the time, being a party to the partition suit. Stark also characterizes appellees' claim in effect as a public easement and contends that there is no language in the partition decree of an intent to create an easement for public use.

---

[8] The complained of testimony consisted of the testimony concerning the intent and understanding of the parties to the partition suit as to the perimeter easement.

The partition decree, as an agreed judgment, is subject to the same rules of interpretation and construction as a contract. *See Gulf Ins. Co. v. Burns Motor, Inc.*, 22 S.W.3d 417, 422 (Tex. 2000). Similarly, basic principles of contract construction govern the terms of an express easement. *See Canyon Reg'l Water Auth. v. Guadalupe-Blanco River Auth.*, 258 S.W.3d 613, 616 (Tex. 2008); *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700-01 (Tex. 2002). Whether a contract is ambiguous is subject to *de novo* review. *See MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 650-51 (Tex. 1999). A court decides whether a contract is ambiguous by looking at the contract as a whole in light of the circumstances present when the contract was entered. *See Sacks v. Haden*, 266 S.W.3d 447, 451 (Tex. 2008) (per curiam); *see also Marcus Cable Assocs.*, 90 S.W.3d at 701("[A]n easement 'should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding the creation of the servitude, and to carry out the purpose for which it was created.'"(quoting Restatement (Third) of Property (Servitudes) § 4.1 (2000))).

When a court concludes that contract language can be given a certain or definite meaning, then the language is not ambiguous, and the court is obligated to interpret the contract as a matter of law. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports." *Sacks*, 266 S.W.3d at 451 (citing *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951)). An ambiguity arises when the application of established rules of construction leaves an agreement susceptible to more than one meaning and two or more potential meanings are

9

reasonable. *See id.*; *Dewitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument. *See Sacks*, 266 S.W.3d at 450-51. Applying these principles, we turn to our interpretation of the partition decree.

Reviewing the express language of the partition decree, the decree confirms the report by the commissioners of their proposed partition. It then states that the partition tracts are "subject to easements as described in the plats above described and attached hereto for ingress and egress roadway and utility purposes." The partition decree expressly shows (i) the location and description of the partitioned tracts, the easements, and appellees' land; (ii) tracts 3 and 4 are the only tracts that are burdened by the cattle path easement and by an extension of the perimeter easement; and (iii) there are no similar extensions of the perimeter easement between other partitioned tracts. As to the circumstances surrounding the creation of the perimeter easement, both appellees' property and the Kellough property prior to the partition were accessed from Pecan Acres Road, and the Kellough property was burdened by the cattle path easement that provided access to appellees' property. By creating the perimeter easement between tracts 3 and 4 as an alternative to the cattle path easement, the tracts are more equally burdened with the access easement to appellees' property.

Under Stark's proposed interpretation that only parties to the partition suit were beneficiaries of the perimeter easement, the portion of the perimeter easement between tracts 3 and

10

4 would serve no apparent purpose as it would be a spur easement to a dead end.[9] Her proposed interpretation also is inconsistent with her position that appellees, as the owners of the bordering property, are beneficiaries of the cattle path easement shown on the survey plat. Further, as to Stark's claim that appellees, in effect, seek a public easement, the basis of appellees' claim is their ownership of the adjoining land, and the district court specifically limited its declaration as to their rights to the perimeter easement accordingly:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED and the Court does hereby declare that Defendants and Counter-Plaintiffs [ ], and their successors and assigns, as owners of that certain . . . acres of land, more or less, in Bastrop County, Texas, which is described more specifically in that certain Warranty Deed with Vendor's Lien dated October 27, 2006, from Amanda Joyce Roth, as grantor, recorded under Clerk's file number . . . and in Volume [ ], Page [ ], of the Official Public Records of Bastrop County, Texas [ ], are beneficiaries of that certain 60-foot wide access easement (hereinafter referred to for all purposes in this Judgment as the "Perimeter Easement").[10]

Reviewing the partition decree as a whole and the circumstances surrounding its creation, we conclude that the partition decree is not ambiguous as to the perimeter easement and that the portion of the perimeter easement on tract 3 was created, at least in part, to provide appellees, as the owners of the bordering property, access to their property from Pecan

---

[9] Stark also contends on appeal that the portion of the perimeter easement on tract 3 ceased to exist when she purchased adjoining tracts from the heirs to the partition suit because the purpose of the easement ceased to exist—"one does not need an easement to travel across one's land." But the purpose of the perimeter easement to provide access to appellees' property remains regardless of Stark's easement rights.

[10] The judgment recites the same declarations as to the respective properties purchased by the Myers and the Loyas from Amanda Roth except as to the names and recording information.

Acres Road. *See* Sacks, 266 S.W.3d at 451; *Marcus Cable Assocs.*, 90 S.W.3d at 701; *Coker*, 650 S.W.2d at 393.[11]

Based on our conclusion that the express terms of the partition decree support the district court's declaration that appellees are beneficiaries of the perimeter easement, we also conclude that any error by the district court in allowing parol evidence or in submitting intent of the perimeter easement to the jury did not probably cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1). Further, even if we were to conclude that the partition decree as to the perimeter easement was ambiguous, we would reach the same conclusion that the district court did not err in its declaration based on the jury's finding that the intent of the perimeter easement was to provide access to appellees' property. The testimony of the three participants in the partition suit to testify was consistent and uncontroverted. They testified that, consistent with the perimeter easement as shown on the survey plat, the portion of the perimeter easement on the boundary line between tracts 3 and 4 was created to provide access to appellees' property.

**CONCLUSION**

Because we conclude the district court did not err in declaring that appellees are beneficiaries of the perimeter easement created in the partition decree, we overrule Stark's issues and affirm the district court's judgment.

---

[11] In her reply brief, Stark argues that appellees' interpretation of the partition decree renders the language in the commissioners' report that "each tract owner shall have access for roadway and utility purposes to each tract" meaningless. But the tract owners' status as beneficiaries is not mutually exclusive with appellees' status as beneficiaries.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   August 12, 2009