NO. 12-10-00189-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

KEJZAR MOTORS, INC. d/b/a
EASTEX        §                 APPEAL FROM THE 159TH

TRACTOR & POWERSPORTS
AND

JASPER FARM & RANCH
SUPPLY,        

APPELLANT

 

V.                                                                      
 §                  JUDICIAL DISTRICT COURT 

 

KUBOTA TRACTOR CORPORATION

AND MICHAEL HAMMER,

APPELLEES                                                    
§                  ANGELINA COUNTY, TEXAS







OPINION

            Kejzar
Motors, Inc., d/b/a Eastex Tractor and Powersports and Jasper Farm and Ranch
Supply (Eastex), brings this interlocutory appeal from the trial court’s denial
of its application for a temporary injunction against Kubota Tractor
Corporation and Michael Hammer.  Relying on the Texas Business Opportunities
and Agreements Act (TBOA), Eastex raises six issues contending the trial court
erred in denying its application.  We affirm.

 

Background

            Kubota
manufactures farm, industrial, and outdoor equipment.  Eastex is a Kubota
tractor dealer, with locations in Nacogdoches and Jasper, Texas.  Owners Mark
Kaiser and David Feron purchased the two existing dealerships in 2007.  They
operate those two stores as one dealership with two locations.  In early 2010,
Kubota granted a dealership to Michael Hammer, located in Lufkin, between
Eastex’s two dealership locations.

            In
May 2010, Eastex filed its original petition and application for injunctive
relief to prevent Kubota from contracting with Hammer to locate a dealership in
the same trade area as Eastex’s stores.  Eastex asserted that the new location,
which is less than twenty-five miles from Eastex’s Nacogdoches location, would
constitute a substantial change in the competitive circumstances of Eastex’s
contractual relationship with Kubota and lead to the eventual destruction of
Eastex’s dealership.  Eastex asserted causes of action against Kubota for
violation of the TBOA, the Texas Deceptive Trade Practices and Consumer
Protection Act, breach of contract and the implied covenant of good faith and
fair dealing, promissory estoppel, and unjust enrichment.  Additionally, it
asserted tortious interference with contractual relations and prospective
economic advantage against both Kubota and Hammer.

            The
trial court immediately signed a temporary restraining order based on Eastex’s
statutory rights under the TBOA, ordering Kubota and Hammer to “desist and
refrain from opening a new Kubota dealership in Angelina or Nacogdoches
[C]ounty.”  Two weeks later, after a two day hearing, the trial court denied
Eastex’s application for a temporary injunction and dissolved the temporary
restraining order. Eastex brought this interlocutory appeal.  See Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a)(4) (Vernon 2008).

 

Temporary Injunction

            In
its first issue, Eastex contends the trial court erred when it denied Eastex’s
application for a temporary injunction.  Eastex argues that the court
erroneously concluded that Eastex had no probable right of recovery. 
Specifically, Eastex argues that Kubota violated the TBOA because it changed
the prevailing conditions, surroundings, and background of the Dealer Agreement
when it placed a competing dealer in Lufkin after previously holding Eastex
responsible for Angelina County.  In its second issue, Eastex asserts that the
trial court erred when it ruled that the act of placing a competing dealer in
Lufkin could not constitute a substantial change in the competitive
circumstances of a dealer agreement that unambiguously permits the dealer only
a nonexclusive local market.  Eastex further contends that the trial court’s
ruling constitutes a declaration that the Dealer Agreement trumps the TBOA,
thus rendering the statute meaningless.  In its fifth issue, Eastex asserts
that the trial court erred in not considering extrinsic evidence in deciding
whether Kubota substantially changed the Dealer Agreement.

Standard
of Review

            In
an interlocutory appeal from a ruling on an application for a temporary
injunction, we do not review the merits of the applicant’s case.  See Davis
v. Huey, 571 S.W.2d 859, 861 (Tex. 1978).  To obtain a temporary
injunction, the applicant must plead a cause of action and show a probable
right to the relief he seeks, and probable, imminent, and irreparable injury in
the interim.  Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex.
2002).  The applicant is not required to establish that he will finally prevail
in the litigation.  State v. Sw. Bell Tel. Co., 526 S.W.2d 526,
528 (Tex. 1975).  Whether to grant or deny a temporary injunction is within the
trial court’s sound discretion.  Butnaru, 84 S.W.3d at 204.  We
limit our review to whether there has been a clear abuse of discretion.  Id. 
We may not substitute our judgment for that of the trial court; we merely
determine whether the court’s action was so arbitrary as to exceed the bounds
of reasonable discretion.  Id.  The trial court abuses its
discretion when it misapplies the law to the established facts, or when the
evidence does not reasonably support the conclusion that the applicant has a
probable right of recovery.  Sw. Bell Tel. Co., 526 S.W.2d at
528.

Applicable
Law

            Chapter
55 of the Texas Business and Commerce Code addresses industrial equipment
dealer agreements.  See Tex. Bus.
& Com. Code Ann. §§ 55.001–.201 (Vernon 2009).  Section 55.052
provides that “[a] supplier may not substantially change the competitive
circumstances of a dealer agreement without cause.”  Tex. Bus. & Com. Code Ann. § 55.052.  Further, a supplier
may not terminate, cancel, or fail to renew a dealer agreement without cause.  Id.
§ 55.056.  A person injured by a violation of Chapter 55 may bring an action
for an injunction and damages.  Id. § 55.201.

Analysis

            The
trial court determined that, as a matter of law, Eastex does not have a
probable right to recover under Section 55.052 “because the Dealership
Agreement, which has an entirety clause, unambiguously provides Eastex with no
exclusive territory.”  The trial court concluded that the Dealer Agreement
provides that Kubota had the right, in its sole discretion, to enter into
Dealer Agreements with others at any location and that Eastex agreed to these
terms.  The court also concluded that the parol evidence rule precluded it from
considering evidence that conflicted with the unambiguous provisions and terms
of the Dealer Agreement.  Further, the court concluded that Eastex did not
prove a probable right of recovery or relief on its cause of action for
violation of Section 55.056.  

We
first must consider the question of whether the Dealer Agreement is ambiguous. 
Whether a contract is ambiguous is a question of law that must be decided by
examining the contract as a whole in light of the circumstances present when
the contract was entered.  Sacks v. Haden, 266 S.W.3d 447, 451
(Tex. 2008).  A contract is not ambiguous if a court can give the contract a
definite or certain meaning as a matter of law.  Columbia Gas
Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex.
1996).  If a written contract’s terms are unambiguous, then parol evidence is
inadmissible to vary, add to, or contradict its terms.  Sun Oil Co. v.
Madeley, 626 S.W.2d 726, 732 (Tex. 1981); Zapata County Appraisal
Dist. v. Coastal Oil & Gas Corp., 90 S.W.3d 847, 852 (Tex. App.–San
Antonio 2002, pet. denied) (op. on reh’g).

Eastex
argues that the trial court erroneously refused to consider evidence regarding
what the parties reasonably believed to be Eastex’s local market.  Paragraph
6.D. of the Dealer Agreement provides that Eastex shall “maintain an inventory
of Products constituting adequate stock to serve the competitive requirements
of the local market surrounding [its] Retail Store.”  Paragraph 6.I. provides
that Eastex “shall maintain the location(s) of the Retail Store(s) at the
location(s) set forth on the first page … of this Agreement” and “shall focus
the sales, service, and marketing efforts for the Retail Store(s) in the Local
Market(s).”  Eastex argues that evidence related to the local market was needed
to determine the competitive circumstances of the dealer agreement.  Eastex
further argues that evidence of the local market is important because it
provides the baseline for evaluating the substantiality of the change in
competitive circumstances that will occur when Kubota authorizes placement of a
new dealer in Eastex’s local market.  

            The
Dealer Agreement, however, is written in such a way that it can be given a
definite meaning without a definition or explanation of what the parties
reasonably believed to be Eastex’s local market.  Paragraph 1.A. of the Dealer
Agreement provides that Kubota “reserves the right, in its sole discretion, to
directly or indirectly sell Products to others and to enter into Dealer Sales
and Service Agreements with others at any location within or without the locale
wherein [Eastex] maintains the Retail store(s).”  Regardless of what
constituted Eastex’s local market, Kubota had the right to enter into a dealer
agreement with others at any location.  We agree with the trial court’s
determination that the Dealer Agreement is not ambiguous.  See New Ulm
Gas, Ltd., 940 S.W.2d at 589.  Furthermore, as there was no change in
the competitive circumstances of the Dealer Agreement, the necessity for a
baseline for evaluating the substantiality of a change never arises.  The trial
court did not err in not considering extrinsic evidence in deciding whether
Kubota substantially changed the Dealer Agreement.  See Madeley,
626 S.W.2d at 732.  We overrule Eastex’s fifth issue.

To
prove entitlement to the temporary injunction, Eastex needed to prove a
probable right to relief under the TBOA.  Eastex alleged that Kubota violated
Section 55.052, that is, substantially changed the competitive circumstances of
their Dealer Agreement without cause, by appointing a new Kubota dealer in
Eastex’s trade area.  Paragraph 1.A. of the Dealer Agreement clearly refutes
that assertion.  That paragraph unambiguously gives Kubota the right to enter into
dealer agreements “with others at any location within or without the locale
wherein [Eastex] maintains” its stores.  Kubota’s right to do so is part of the
competitive circumstances contemplated by their Dealer Agreement.  See Freightliner
of Knoxville, Inc. v. DaimlerChrysler Vans, LLC, 484 F.3d 865, 869-70
(6th Cir. 2007) (business relationship between supplier and dealer did not
amount to a change in the competitive circumstances of the agreement in
violation of statute where the relationship was anticipated by the dealer
agreement). 

Even
though Section 55.056 is not mentioned either by name or by reference to its
subject matter in Eastex’s list of issues, Eastex seems to also attack the
trial court’s determination that Eastex has no right to relief under Section
55.056.  However, it is difficult to discern Eastex’s reasoning.  Section
55.056 provides that the supplier may not terminate a dealer agreement without
cause.  See Tex. Bus. & Com.
Code Ann. § 55.056.  Eastex admits that Kubota has never threatened to
terminate Eastex and does not argue that Kubota actually attempted to terminate
their agreement.  Instead, Eastex claims that appointing a new, competing
dealer in Eastex’s trade area would lead to Eastex’s “destruction” and
constitute a de facto termination of the Dealer Agreement by Kubota due to loss
of business.  Eastex claims that it presented evidence predicting that “the
gross margin would drop significantly” if a new Kubota dealer opened in
Lufkin.  In its brief, Eastex refers to its own evidence as “common-sense
assumptions.”  

One
of the owners of Eastex testified that Eastex was currently operating “at break
even” and that it would not take much in lost sales to cause Eastex to go out
of business.  He testified that, based on his calculations, Eastex’s sales
would drop thirty-four percent if the new dealer was allowed to open in
Lufkin.  Kubota did its own analysis and determined that the new Lufkin dealer
would have a potential impact on Eastex of eight percent of sales in Angelina
County.  However, Kubota’s East Texas regional sales manager testified that,
based on his experiences with other dealers, he believed that placement of a
new dealer in Lufkin would lead to an improvement in Eastex’s sales.  

Assuming
Section 55.056 includes de facto or constructive termination, a question we do
not address, Eastex did not show that placement of a new Kubota dealer in
Lufkin would constitute a constructive termination of the Dealer Agreement. 
Faced with conflicting evidence, the trial court did not abuse its discretion
in determining that Eastex did not prove a probable right of recovery under
Section 55.056.

The
trial court’s ruling is not, as Eastex claims, a declaration that the Dealer
Agreement trumps the statute.  Under the facts of this case, the statute is not
implicated and cannot be used to alter the terms of the parties’ binding
agreement.  Because Eastex did not show a probable right to the relief sought,
the trial court did not abuse its discretion in denying Eastex’s application
for a temporary injunction.  See Butnaru, 84 S.W.3d at 204.  We
overrule Eastex’s first and second issues.

 

Conclusion

            Parol
evidence was inadmissible to vary the terms of the unambiguous Dealer
Agreement.  Eastex has not shown a probable right of recovery.  Therefore, the
trial court did not abuse its discretion in denying Eastex’s application for a
temporary injunction.  We need not reach the remainder of Eastex’s issues.  See
Tex. R. App. P. 47.1.

            We affirm
the trial court’s order denying Eastex’s application for a temporary
injunction.  

 

          

                                                                              Brian
T. Hoyle

                                                                                          
                 Justice

 

 

 

Opinion delivered January 19, 2011.

Panel consisted of
Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

(PUBLISH)