Opinion issued May 19,
2011          



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00856-CV

———————————

Gary Grayson as Attorney-In-Fact

for Lela
Grayson,
Appellant

V.

Richard
Grayson, Appellee



 



 

On Appeal from the 113th District
Court

Harris County, Texas



Trial Court Case No. 2008-46633

 



 

 

MEMORANDUM
OPINION

          This appeal of a take‑nothing
summary judgment arises out of a December 28, 1999 agreement in which appellant
Lela Grayson transferred shares of stock in Grayson Armature, Large Motor Division,
Inc. to a family partnership controlled by her son, appellee Richard Grayson.  This transfer gave Richard a majority‑ownership
interest in the corporation.  The
agreement was expressly conditioned on Richard becoming the president and chief
executive officer (CEO) of the corporation and required that “Leon Huggins
shall no longer hold the title of President.”

          The summary judgment evidence reflects that Huggins was
president from 1992 until December 28, 1999, when the corporation’s board of
directors appointed Richard as president and CEO.  After approximately 6 months, Richard moved to
San Antonio and appointed Huggins as the president.  In his affidavit, Richard states that he
informed his mother on several occasions of the change in management.

          In August 2008, Gary Grayson, in his capacity as Lela
Grayson’s attorney‑in‑fact, sued Richard for breach of contract and
fraud.  In his petition, Gary alleged
that Richard breached the contract “by not changing his title to President and
CEO” of the corporation and further breached the contract “by allowing Leon
Huggins to serve as President of the corporation, a position he held at the
time the Stock Transfer Agreement was signed by Lela Grayson, and the position
he still holds today.”  Gary alleged that
Richard committed fraud because he “made a representation to Lela Grayson that
was material; the representation was false; at the time the representation was
made to Lela Grayson [Richard] knew the representation was false; [Richard]
made the representation with the intent that Lela Grayson act on it; Lela
Grayson relied on the representation and was damaged thereby.”

          Richard filed a motion for summary judgment on the
following independent grounds: (1) he did not breach the agreement or commit
fraud because he removed Huggins from the position of president and appointed
himself as president and CEO; (2) the breach‑of‑contract and fraud
claims are barred by the four‑year statute of limitations; and (3) a portion
of the agreement, which Gary argues requires the indefinite removal of Huggins
as president, violates public policy.  See Tex.
Civ. Prac. & Rem. Code Ann. § 16.004 (West 2002), § 16.051 (West 2008); Tex. R. Civ. P. 166a(c).  Gary filed a response to the motion, which in
part (1) disputed whether Richard ever became president and replaced Huggins
and (2) claimed that Lela did not learn that Huggins was the president until
June 2007.  Richard filed a reply in
which he suggested that the true motivation behind the lawsuit was the desire
of his brothers Gary Grayson and Dale Grayson to undo the 1999 stock transfer
from their mother to him.  Richard further
noted that Gary’s response to the motion for summary judgment contained no
evidence controverting Richard’s December 28, 1999 appointment as president and
CEO.

          The trial court granted the motion for summary judgment and
rendered a final take‑nothing judgment. 
The summary judgment did not specify the grounds on which it was based.  On appeal, Gary challenges all three grounds
for summary judgment, contending the trial court erred if it (1) held that
Richard did not breach the agreement with Lela, (2) held the claims were barred
by limitations, or (3) held that the agreement was unenforceable as it violated
public policy.

          The
standard of review for a traditional summary judgment is well established: (1)
the movant for summary judgment has the burden of showing that no genuine issue
of material fact exists and that it is therefore entitled to summary judgment
as a matter of law; (2) in deciding whether there is a disputed material fact
issue precluding summary judgment, evidence favorable to the nonmovant will be
taken as true; and (3) every reasonable inference must be indulged in favor of the
nonmovant and any doubts resolved in the nonmovant’s favor.  See,
e.g., Nixon v. Mr. Property Mgmt. Co.,
690 S.W.2d 546, 548–49 (Tex. 1985).  If,
as here, the trial court’s summary judgment does not specify the ground on
which the court relied, the summary judgment must be affirmed if any of the
grounds are meritorious.  Dow Chem. Co. v. Francis, 46 S.W.3d 237,
242 (Tex. 2001) (quoting Carr v. Brasher,
776 S.W.2d 567, 569 (Tex. 1989)).

          In
his first issue, Gary contends the trial court erred if it held
that Richard did not breach the agreement with Lela.  On appeal, Gary does not challenge that
Richard was appointed as president and CEO on December 28, 1999.  Instead, Gary argues that the agreement was
breached when Richard reappointed Huggins as president, because Gary contends
the agreement precluded Huggins from ever returning to serve as president:

This interpretation is supported by the plain
language of the Agreement, which prohibits Huggins’ reappointment by providing
he “shall no longer hold the title of President.” . . .  Giving the phrase its plain meaning, the
provision that Huggins “no longer hold” the office of president should be found
to mean just what it says — Huggins cannot be the president of Grayson
Armature, ever.

 

          The construction of an unambiguous contract is a question
of law for the court to determine.  MCI Telecomms. Corp. v. Tex. Util. Elec. Co.,
995 S.W.2d 647, 650 (Tex. 1999).  An
unambiguous contract will be enforced as written, and parol evidence will not be
received for the purpose of creating an ambiguity or to give the contract a
meaning different from that which its language imports.  David
J. Sacks, P.C. v. Haden, 266 S.W.3d 447, 450 (Tex. 2008) (citing Universal C.I.T. Credit Corp. v. Daniel,
243 S.W.2d 154, 157 (Tex. 1951)).  Only
where a contract is ambiguous may a court consider the parties’ interpretation
and admit extraneous evidence to determine the true meaning of the instrument.  Haden,
266 S.W.3d at 450 (citing Nat'l Union
Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex.1995)).

          Neither Gary nor Richard contends that the agreement is
ambiguous.  Gary instead cites six cases
from other jurisdictions for the proposition that “the phrase ‘no longer’ means
something like ‘not anymore, now or in the future.’”[1]  He therefore argues that the plain meaning of
the agreement is that Huggins could never again serve as president.

          None of the cases Gary cites speaks to an interpretation of
the phrase “no longer” as having the specific meaning of prohibiting some
specified action both for the present and in the future.  Instead, each cited case interprets a
contractual or statutory provision in which the phrase “no longer” occurs.  Gary also argues it is perfectly proper for a
contract in which one party has performed all its obligations not to have a
termination date.  See Mobil Exploration &
Producing U.S., Inc. v. Dover Energy Exploration, L.L.C., 56 S.W.3d 772,
778 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing Kennedy v. McMullen, 39 S.W.2d 168, 174 (Tex. Civ. App.—Beaumont
1931, writ ref’d)).  We do not disagree
with that statement of law, but it merely begs the question whether Richard had
already performed all his obligations under the agreement.

          The complete contractual provision at issue is the
following:

IT IS FURTHER AGREED that
Richard L. Grayson shall take whatever action is necessary to change his title
to “President and C.E.O.” of the Corporation, and that Leon Huggins shall no
longer hold the title of President.

 

While the agreement could have
explicitly prohibited Richard from ever allowing Huggins to serve as president again,
it was not so drafted.  We hold that the
plain meaning of this provision of the agreement required Richard to become the
corporation’s president and CEO, replacing Huggins.  The summary judgment evidence, which Gary
does not contest on appeal, demonstrates that Richard complied with the
requirements of this provision.




 

          Because we hold that Richard did not
breach the agreement, we overrule issue one.  Having determined that one of Richard’s
grounds for summary judgment is meritorious,
we affirm the trial court’s judgment without reaching issues two and
three.  See Dow Chem. Co. v. Francis,
46 S.W.3d 237, 242 (Tex. 2001) (quoting Carr
v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989)).

 

 

                                                                   Jim
Sharp

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

 











[1]        McDaniel
v. Miss. Baptist Med. Ctr.,
877 F. Supp. 321, 326–28 (S.D. Miss. 1994) (interpreting statutory phrase “is
no longer engaging in such [illegal drug] use”), aff’d, 74 F.3d 1238 (5th Cir. 1995); Am. Freight Sys., Inc. v. Interstate Commerce Comm’n (In re Am. Freight Sys., Inc.), 174 B.R.
604, 608–09 (Bankr. D. Kan. 1994) (interpreting statutory phrase “is no longer
transporting property”);          CF & I Steel Corp. v. Conners (In re CF & I Fabricators, Inc.), 163
B.R. 858, 864–865, 875 (Bankr. D. Utah 1994) (discussing contract provision
specifically defining phrase “no longer in business” to mean that company has
“ceased all mining operations and ceased employing persons under this Labor
agreement, with no reasonable expectation that such operations will start up
again”); Heist v. Cnty. of Colusa,
213 Cal. Rptr. 278, 284 (Cal. Ct. App. 1984) (interpreting sufficiency of
administrative finding that road was “no longer necessary for public road
purposes); DiPasquale v. Bd. of Review,
669 A.2d 275, 277 (N.J. Super. Ct. App. Div. 1996) (interpreting statutory
phrase “is no longer available”); In re Erie Golf Course, 963 A.2d 605,
613 (Pa. Commw. Ct. 2009) (interpreting statutory phrase “is no longer
practicable or possible”), vacated,
992 A.2d 75 (Pa. 2010).