



## MEMORANDUM OPINION

No. 04-11-00142-CV

**CINTAS CORPORATION**,
Appellant

v.

Lissette A. **QUEVEDO**, Individually, and Playa Seafood, Inc. D/B/A/ La Playa Seafood
Restaurant,
Appellees

From the County Court at Law No. 7, Bexar County, Texas
Trial Court No. 354116
Honorable Karen Crouch, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Rebecca Simmons, Justice

Delivered and Filed:  May 30, 2012

REVERSED AND RENDERED

Cintas Corporation sued Lissette A. Quevedo, Individually, and Playa Seafood, Inc. d/b/a

La Playa Seafood Restaurant ("Quevedo") for breach of contract. In its petition, Cintas sought to

recover liquidated damages under the contract. The case was tried to the court. The trial court

found Quevedo terminated the contract but awarded no liquidated damages. On appeal, Cintas

argues the trial court erred in failing to award liquidated damages under the contract and

attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code. Because we

agree the trial court erred in failing to award liquidated damages and attorney's fees, we reverse the trial court's judgment. We render judgment in favor of Cintas on its claims for liquidated damages and attorney's fees.

## BACKGROUND

On April 7, 2008, Cintas and Quevedo entered into a written contract. In the contract, Cintas agreed to furnish products and services to Quevedo for her restaurant. Many of the products furnished were linens that Cintas picked up, laundered, and returned to Quevedo on a weekly basis. The duration of the contract was sixty months. In the event of a breach, Quevedo promised to pay Cintas 50% of the average weekly invoice total multiplied by the number of weeks remaining in the unexpired term, or buy back all products allocated at the current replacement values, whichever was greater. On October 13, 2009, Quevedo wrote a letter to Cintas explaining that she was discontinuing its service because the price was too high for her at the time.

In November 2009, Cintas sued Quevedo for breach of contract. Quevedo answered, denying the allegations in the petition. Quevedo also pled Cintas's claim was barred by duress. According to her pleadings, Cintas made promises and statements to her when the contract was signed, and pressured her into signing the contract. Additionally, Quevedo alleged Cintas engaged in deceptive trade practices. In support of this counterclaim, Quevedo alleged that when she signed the contract, she was told by the sales representative that she was required to abide by the contract for only one year. She further alleged she was never given the second page of the contract.

At trial, Cintas presented a copy of the written contract, which was admitted into evidence. The first page of the contract contains an itemization of the products to be provided by

Cintas and the cost of the products. The first page also states, "This agreement is effective as of the date of execution for a term of 60 months from date of installation." The initials "L.A.Q." appear above "60 months." The second page of the contract contains additional provisions including provisions for early termination of the contract and liquidated damages. The signatures of a Cintas representative and Quevedo appear at the bottom of the first page. Also appearing at the bottom of the first page are the phrases, "Page one of two" and "Form Distribution: (1) White-Office; (2) Canary-Customer; and (3) Pink-Corporate Office." Appearing at the bottom of page two is the phrase "Page two of two."

Cintas also presented the testimony of Edward Gonzalez, who was a sales associate and former service manager for Cintas. Gonzalez testified that Cintas would never do business with a customer without a contract. The typical term of a Cintas contract was sixty months, which was the industry standard. Gonzalez stated that a shorter term contract would result in higher prices per product. Gonzalez also testified the original contract with Quevedo appeared on a single page—front and back—and was in triplicate. In September 2009, a service representative called him and told him that Quevedo wanted to terminate the contract. Quevedo's reason for terminating the contract involved the cost of the service, not the quality of the service. Gonzalez indicated he could reduce Quevedo's costs by reducing the number of products and services provided by Cintas. Quevedo refused this option.

Cintas also called Quevedo to testify. Quevedo acknowledged she signed the contract and placed her initials above the phrase "a term of 60 months." However, Quevedo stated she was told by a Cintas sales representative, Jimmy Sanchez, that she would be required to abide by the contract for only one year. Quevedo indicated she was never given the second page of the contract; the first time she saw the second page of the contract was after Cintas filed suit against

her. Quevedo said she no longer had her copy of the contract, but she recalled that it was canary. Quevedo also said she wrote a letter to Cintas on October 13, 2009, advising the company that she was terminating the contract. Her reason for terminating the contract was because "unfortunately the price [was] just too high for me at this time." A copy of the letter was admitted into evidence.

After hearing all of the evidence, the trial court ruled the contract was terminated on October 13, 2009, and Quevedo owed Cintas nothing under the contract from that day forward. The trial court rendered judgment in accordance with its ruling. The trial court filed findings of fact and conclusions of law. The trial court found Cintas and Quevedo entered into a contract for services on or about April 7, 2008, and this contract was terminated by Quevedo on October 13, 2009. The trial court concluded that because the contract between Cintas and Quevedo was terminated, Quevedo owed Cintas only for services provided up to the date of termination. The trial court also found Cintas did not violate the Deceptive Trade Practices Act by causing Quevedo to sign the contract under duress or by committing fraud. Cintas requested additional findings of fact and conclusions of law; however, no additional findings of fact and conclusions of law were filed by the trial court. Cintas appealed.

In its brief, Cintas argues the trial court erred (1) by allowing Quevedo to present parol evidence of an oral agreement concerning the duration of the contract; (2) by not awarding liquidated damages as provided in the contract; (3) by not awarding attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code; and (4) by not making additional findings of fact and conclusions of law. Although given the opportunity to do so, Quevedo has not filed a brief in this appeal.

# PAROL EVIDENCE

In its fourth issue, Cintas argues the trial court erred in allowing Quevedo to present evidence of an oral agreement that varied the sixty-month term of the written contract. Although not included in its express findings, the trial court apparently found Quevedo was authorized to terminate the contract prior to the expiration of sixty months. The only evidence to support this finding, however, was Quevedo's testimony that she and the sales representative had an oral agreement that she would be required to comply with the contract for only one year.[1]

In Texas, the parol evidence rule generally bars enforcement of prior or contemporaneous agreements introduced to vary, add to, or contradict terms of a fully integrated written instrument. *Beijing Metals & Minerals Import/Export Corp. v. Amer. Bus. Ctr., Inc.*, 993 F.2d 1178, 1182-83 (5th Cir. 1993) (citing *Tripp Village v. MBank Lincoln Centre*, 774 S.W.2d 746, 749 (Tex. App.—Dallas 1989, no writ)); *Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 31 (Tex. 1958). A written agreement presumes that all prior agreements of the parties relating to the transaction have been merged into the written instrument. *Beijing Metals*, 993 F.2d at 1183 (citing *Weinacht v. Philips Coal. Co.*, 673 S.W.2d 677, 679 (Tex. App.—Dallas 1989, no writ)). "An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a different meaning from that which its language imports." *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (citing *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951)).

The parol evidence rule is not a rule of evidence, but a rule of substantive law. *Hubacek*, 317 S.W.2d at 31. If a contract is unambiguous, the parol evidence rule precludes consideration

---

[1]According to the contract, the only way Quevedo was authorized to terminate the contract early was if she had made a formal complaint "sent by registered letter to the Company's General Manager" about the quality of the service, and if that complaint was not resolved in a reasonable period of time. There was no evidence showing Quevedo made any complaint about the quality of service.

of evidence of prior or contemporaneous agreements unless an exception to the parol evidence rule applies. *Sacks*, 266 S.W.3d at 451 (citing *Hubacek*, 317 S.W.2d at 31). In the absence of any ambiguity, accident, mistake, or fraud shown in connection with the contract, the parol evidence rule renders inadmissible any testimony to vary the legal effect of a writing. *Hartford Ins. Co. v. Commerce & Industry Ins. Co.*, 864 S.W.2d 648, 650 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Testimony that varies the legal effect of a writing, whether objected to or not, is without probative force and will not support a finding. *Huddleston v. Fergeson*, 564 S.W.2d 448, 452 (Tex. Civ. App.—Amarillo 1978, no writ).

We conclude Quevedo's testimony that she and a sales representative had an oral agreement that she would be required to abide by the contract for only one year varied the legal effect of the contract. Moreover, there was no ambiguity, accident, mistake, or fraud shown in connection with the contract. Quevedo's testimony about the oral agreement was parol evidence. Because Quevedo's testimony was parol evidence, it had no probative force and could not support a finding that Quevedo was authorized to terminate the contract early. *See id.* (holding trial court erred in not excluding testimony that varied the terms of the written contract). We sustain Cintas's fourth issue.

### LIQUIDATED DAMAGES

In its second issue, Cintas argues the trial court erred in not awarding liquidated damages based on Quevedo's early termination of the contract. The contract included the following liquidated damages provision:

> If this agreement is terminated early, the parties agree that the damages sustained by Company will be substantial and difficult to ascertain. Therefore, if this agreement is terminated by Customer prior to the applicable expiration date for any reason other than for documented quality of service reasons which are not cured as set forth above, or terminated by Company for cause at any time, Customer will pay to Company as liquidated damages and not as a penalty, the

greater of 50% of the average weekly invoice total multiplied by the number of weeks remaining in the unexpired term, or buy back all Facility Services Products allocated to Customer at the then current replacement values.

We conclude Cintas was entitled to liquidated damages under the contract.

We next address the calculation of liquidated damages under the contract. According to the contract, Cintas was entitled to liquidated damages calculated as follows: "*the greater of* 50% of the average weekly invoice total multiplied by the number of weeks remaining in the unexpired term, *or* buy back all Facility Services Products allocated to Customer at the then current replacement values." (emphasis added). The evidence presented at trial supported the former, rather than the latter, method of calculating liquidated damages. The trial court found, and the evidence showed, the parties entered into a sixty-month contract on or about April 7, 2008. The trial court also found, and the evidence showed, Quevedo terminated the contract on October 13, 2009. When the contract was terminated by Quevedo, 181 weeks remained on the contract. The evidence showed the average weekly invoice was $75.67.[2] Fifty-percent of the average weekly invoice was $37.83. Based on the contract and the evidence, Cintas was entitled to liquidated damages in the amount of $6,847.23. We conclude the trial court erred in failing to award Cintas liquidated damages in the amount of $6,847.23. We sustain Cintas's second issue.

### ATTORNEY'S FEES

In its third issue, Cintas argues the trial court erred in not awarding it attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code. Section 38.001 authorizes the recovery of reasonable attorney's fees for a claim based on a contract. TEX. CIV. PRAC. & REM. CODE. ANN. § 38.001 (West 2008). The award of reasonable and necessary attorney's fees

---

[2]Cintas's representative testified the average weekly invoice was $75.67. Quevedo indicated in her testimony that the amount was actually higher but did not otherwise challenge the average weekly invoice amount.

is mandatory under Section 38.001 if there is proof of the reasonableness of the fees. *Budd v. Gay*, 846 S.W.2d 521, 524 (Tex. App.—Houston [14th Dist.] 1993, no writ).

At the conclusion of the trial, Cintas attempted to present testimony concerning its claim for attorney's fees. In lieu of testimony, the trial court allowed Cintas to present this evidence by affidavit. The trial court asked Quevedo if she had any objection to the affidavit. Quevedo stated she had no objection to the affidavit. In the affidavit, counsel for Cintas stated Cintas had incurred $8,000.00 in reasonable and necessary attorney's fees in the trial of this case. Counsel further stated that if an appeal was taken, Cintas would incur an additional $5,000.00 in reasonable and necessary attorney's fees.

When evidence of attorney's fees is not contradicted by any other witness, or attendant circumstances, and the evidence is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law. *Brown v. Bank of Galveston, N.A.*, 930 S.W.2d 140, 145 (Tex. App.—Houston [14th Dist.] 1996, *aff'd*, 963 S.W.2d 511 (Tex. 1998)) (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990)). Here, the evidence presented by Cintas in favor of its claim for attorney's fees was clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon. In addition, Quevedo was afforded an opportunity to contradict this evidence, but declined to do so. *See id.* (concluding uncontroverted amount of attorney's fees was established as a matter of law, and the trial court erred by not awarding attorney's fees). We sustain Cintas's third issue. We award Cintas $8,000.00 in attorney's fees for the trial of this case, and $5,000.00 in attorney's fees for the instant appeal.

## CONCLUSION

In light of our disposition of the other issues in this case, we find it unnecessary to address Cintas's remaining issue concerning the absence of additional findings of fact and conclusions of law. *See* TEX. R. APP. P. 47.1 (requiring appellate courts to address only issues necessary to the final disposition of the appeal). We reverse the judgment of the trial court and render judgment that Quevedo pay Cintas liquidated damages in the amount of $6,847.23, and attorney's fees in the amount of $13,000.00. *See id.* 43.3 (requiring appellate courts, as a general rule, to render the judgment the trial court should have rendered).

Karen Angelini, Justice