**Affirmed and Opinion filed December 5, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-12-00946-CV

### EARLINE MELENDEZ, Appellant

### V.

### HOUSTON INDEPENDENT SCHOOL DISTRICT AND CONNIE BERGER, Appellees

**On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 2010-20517**

## O P I N I O N

Earline Melendez claims that she was forced to resign because of a disability. She sued her former employer, the Houston Independent School District ("HISD"), complaining of unlawful discrimination under the Texas Commission on Human Rights Act ("TCHRA"). Melendez also sued Connie Berger, a principal at HISD, alleging causes of action for wrongful termination, defamation, and intentional infliction of emotional distress. HISD moved for summary judgment,

arguing that Melendez was not disabled under the TCHRA. Berger also moved for summary judgment, asserting various affirmative defenses, including a defense that Melendez had failed to exhaust her administrative remedies. The trial court granted summary judgment to both HISD and Berger. We affirm the trial court's judgment dismissing Melendez's claims.

## BACKGROUND

At the time of her resignation, Melendez was an at-will employee with thirteen years of service at HISD. She held a position as Clerk II, and her primary responsibility was to provide secretarial support to administrators at Reagan High School. In addition to her basic duties, Melendez was also tasked with processing student discipline forms.

On December 4, 2009, several students were arrested at school for their alleged involvement in an off-campus burglary. As police began processing their arrests, Melendez prepared the students' discipline forms. Melendez also signed the forms on behalf of several assistant principals, acting on her longstanding belief that she had permission to do so. The forms were distributed to the affected students, who were then placed on suspension.

On December 7, the following school day, Principal Berger received a complaint from parents, requesting an explanation for the students' suspension. Through this complaint, Berger realized that Melendez had processed the students' discipline forms before administrators could coordinate their own response to the alleged burglary. According to Berger, Melendez had no authority to sign the forms on behalf of anyone else and she had disregarded specific directions to not begin the disciplinary process.

2

Berger made plans to discuss the incident with Melendez and to determine an appropriate course of action. These plans were interrupted on December 10, when Melendez checked into a hospital under the recommendation of a school nurse. The nurse had received information earlier that morning that Melendez was "acting kind of funny." Melendez reportedly had difficulty walking, her speech was slurred, and she could not keep her eyes open. Melendez, who had previously suffered a back injury, explained that she had taken prescription pain pills and muscle relaxants on an empty stomach. The nurse contacted Melendez's daughter, who was a student at the school, and the daughter revealed that Melendez had received treatment in July 2009 for problems relating to addiction. When Melendez was readmitted to the hospital, she was again diagnosed with an opiate dependency.

Melendez stayed in the hospital for five days and returned to work on December 16. That day, she had a meeting with Berger and an assistant principal. The parties dispute what happened during the course of this meeting. Berger contends that she discussed only the student discipline incident and her concern that Melendez had forged the signatures of the assistant principals. According to Berger, Melendez resigned her position at the end of the meeting without having explained her actions. Melendez contends that her personal disabilities were also addressed during the meeting. Melendez claims, for instance, that the school nurse interrupted the meeting to show Berger Melendez's confidential medical information. According to Melendez, Berger told her to resign or face immediate arrest for having forged the signatures of the assistant principals. Melendez also contends that she was told to denote on her resignation form that she was leaving HISD for "medical/personal" reasons.

Following her resignation, Melendez filed a charge of discrimination with the Texas Workforce Commission, which issued her a right-to-sue letter. Melendez then initiated this action alleging that HISD had discriminated against her on the basis of disability. Specifically, Melendez alleged that she was constructively terminated "on the fact that she had just been released from an in-patient medical treatment facility" and "due to her alleged abuse of prescription medication." Melendez also sued Berger in her individual capacity, alleging wrongful termination, defamation, intentional infliction of emotional distress, and other causes of action arising out of the student disciplinary incident.

HISD and Berger filed separate motions for summary judgment. HISD argued that the discrimination claim failed as a matter of law because the TCHRA expressly excludes addiction from the definition of disability. HISD also moved for summary judgment on no-evidence grounds, asserting that Melendez could proffer no evidence that she was disabled and that non-disabled employees were treated differently. In her own separate motion, Berger argued that Melendez had failed to exhaust her administrative remedies. Berger also argued that she was immune from liability, that Melendez's defamation claims were barred by the statute of limitations, and that Melendez was restricted from pursuing a claim for emotional distress.

The trial court granted HISD's and Berger's motions for summary judgment. Melendez now appeals.

**STANDARD OF REVIEW**

We review a trial court's summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam); *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). To prevail on a traditional motion for summary judgment, the movant must show that

4

there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant who moves for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Evidence is conclusive only if reasonable minds could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the defendant establishes his right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The nonmovant has no burden to respond to a traditional motion for summary judgment unless the movant conclusively establishes each element of his cause of action or defense as a matter of law. *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999).

With a no-evidence motion for summary judgment, the movant asserts that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The burden shifts to the nonmovant to respond with evidence raising a genuine issue of material fact as to the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We will sustain a no-evidence summary judgment when there is a complete absence of a vital fact, the court is barred by rules of law or of evidence from giving weight to

the only evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a mere scintilla, or the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. The evidence is insufficient if it is so weak as to do no more than create a mere surmise or suspicion that the challenged fact exists. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009).

## HISD'S MOTION FOR SUMMARY JUDGMENT

Melendez pursued a claim under the TCHRA, which prohibits an employer from discharging or discriminating against an employee on the basis of disability, among other classifications. *See* Tex. Lab. Code § 21.051. In her petition, Melendez identified her disability as an "abuse of prescription medication." Melendez elaborated on this claim during her deposition, testifying that she had an ongoing addiction to opiates in December 2009. The prescribed dosage for her two medications was six pills per day, but she admitted that on some occasions she would consume a total of twenty or forty.

"Disability" is a defined term under the TCHRA. With respect to an individual, it means "a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment." *Id.* § 21.002(6). The TCHRA specifically excludes from this definition "a current condition of addiction to the use of alcohol, a drug, an illegal substance, or a federally controlled substance." *Id.* § 21.002(6)(A). Relying on this exclusion, HISD argues that Melendez is not disabled because her admissions conclusively establish that she was addicted to prescription drugs. Melendez responds that the exclusion should not apply, claiming that she was not currently addicted on the date of her constructive termination. She also claims that summary judgment was improper because there is

6

evidence to show that HISD regarded her as having an impairment due to her history of substance abuse.

The parties essentially dispute the meaning of a "current condition of addiction." To resolve this dispute, we must accordingly determine a question of statutory interpretation. We apply the traditional rules of construction when interpreting a statute. *See Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010). These rules instruct that our primary objective is to ascertain and give effect to the legislature's intent, as expressed by the statute's language. *Id.* We thus construe the text according to its plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results. *Id.*

The legislature enacted the TCHRA with the express purpose to "provide for the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 and its subsequent amendments." *See* Tex. Lab. Code § 21.001(3). Therefore, both the federal court decisions interpreting the ADA and the federal administrative regulations regarding the ADA guide our interpretation of "disability" contained in the TCHRA. *See Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381–82 (Tex. 2004); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001).

The TCHRA does not define the word "current," and to our knowledge, no Texas court has been called to construe the meaning of this term in this particular statutory context. The parties advocate different interpretations, both in reliance on federal appellate court decisions. Melendez cites *Teahan v. Metro-North Commuter R.R. Co.*, 951 F.2d 511 (2d Cir. 1991), a case construing a predecessor to the ADA. Under this authority, Melendez asserts that an employee's use of

7

drugs is not "current" if the employee has completed a drug rehabilitation program and she abstains from drugs on the day of an adverse employment action.

Melendez misconstrues the holding in *Teahan*. The Second Circuit held that an employee's substance abuse problem is "current" if it is "severe and recent enough so that the employer is justified in believing that the employee is unable to perform the essential duties of his job." *Id.* at 520. Melendez appears to have relied mistakenly on a separate part of the opinion in which the court considered when, rather than how, an employee's "current" status should be assessed. *See id.* at 518 (deciding that an employee's "current" status should be assessed on the date that the employee is terminated, rather than on the date that the employer first makes the decision to terminate the employee).

HISD urges us to follow *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847 (5th Cir. 1999), a case construing the ADA itself. The question there was whether an employee was excluded from protection because he was "currently engaging in the illegal use of drugs." Consistent with *Teahan*, the Fifth Circuit held that "currently" means "the drug use was sufficiently recent to justify the employer's reasonable belief that the drug abuse remained an ongoing problem." *Id.* at 856; *accord Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 679 (5th Cir. 2013) (reaffirming *Zenor*); *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188 (9th Cir. 2001) (mere participation in a rehabilitation program will not allow a person to evade the ADA's exclusion if the drug use occurred "recently enough so that continuing use is a real and ongoing problem"); *Shafer v. Preston Mem'l Hosp. Corp.*, 107 F.3d 274, 278 (4th Cir. 1997) ("[T]he ordinary or natural meaning of the phrase 'currently using drugs' does not require that a drug user have a heroin syringe in his arm or a marijuana bong to his mouth at the exact moment contemplated."). In addition to the timing of the employee's substance abuse, the

8

Fifth Circuit suggested that an employee's "current" status can depend on other factors including "the level of responsibility entrusted to the employee; the employer's applicable job and performance requirements; the level of competence ordinarily required to adequately perform the task in question; and the employee's past performance record." *Zenor*, 176 F.3d at 856–57. Courts should consider these factors when deciding whether an employer could reasonably conclude that the employee's substance abuse prohibited the employee from performing the essential duties of her job. *See id.* at 857.

The exclusions under the TCHRA and the ADA are similar in both their wording and their effect. The purpose of both provisions is to limit the coverage of persons who might otherwise receive protections because of their addictions. *See* Tex. Lab. Code § 21.002(6)(A); 42 U.S.C. § 12114(a). Guided by analogous federal precedent, we construe a "current condition of addiction" as a condition of addiction that is sufficiently recent to justify the employer's reasonable belief that the addiction remained an ongoing problem. *Cf. Zenor*, 176 F.3d at 856; *see also* Tex. Lab. Code § 21.001(3); *Little*, 148 S.W.3d at 381–82; *Quantum Chem. Corp*, 47 S.W.3d at 476.

In this case, the evidence conclusively established that Melendez suffered from an opiate addiction in the days and weeks preceding her resignation. During her deposition, Melendez testified that she was consuming twenty to forty prescription pills per day, far in excess of her prescribed dosage. Melendez also admitted that she had been addicted to opiates before, that she relapsed, and that her use of pills was "ongoing" in December 2009.[1] On at least one occasion,

---

[1] Melendez seems to attack the summary judgment evidence in one of her footnotes. She suggests that the evidence is not competent because she, as a lay deponent, lacked the expertise to testify about her own addiction. This argument is unpersuasive because lay witnesses may testify about subjects rationally within their own perception. *See* Tex. R. Evid. 701; *Morgan v.*

Melendez suffered an impairment on the job because of her use of drugs. The record also reflects that Melendez was diagnosed with an opiate dependency when she readmitted herself to a hospital six days before her resignation. As a matter of law, Melendez's addiction was sufficiently recent at the time of her purported termination for HISD to reasonably believe that her addiction was ongoing and interfering with the essential duties of her job. *Cf. Zenor*, 176 F.3d at 857 (concluding that employee's use of drugs was "current" where employee's last use of cocaine occurred more than one month before the employer gave notice of the employee's termination); *Baustian v. Louisiana*, 910 F. Supp. 274, 276–77 (E.D. La. 1996) (finding that employee was a current drug user when his last drug use was seven weeks before his termination); *McDaniel v. Miss. Baptist Med. Ctr.*, 877 F. Supp. 321, 326–27 (S.D. Miss. 1995) (finding that employee was a current drug user when his last drug was approximately six weeks before his termination).

Melendez insists that she was free from addiction on the day of her resignation, but this contention is not dispositive. *See Collings v. Longview Fibre Co.*, 63 F.3d 828, 833 (9th Cir. 1995). The record showed that Melendez had refrained from opiates for less than a week before her termination; "[s]uch a short period of abstinence, particularly following such a severe drug problem, does not remove from the employer's mind a reasonable belief that the drug use remains a problem." *Zenor*, 176 F.3d at 857. Indeed, Melendez testified that her opiate

---

*Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984) (lay witness could testify about her own body's response to being exposed to chemical fumes without the aid of expert medical testimony). Melendez also suggests that this evidence cannot be cited by HISD because her attorney objected to this line of testimony on the basis of form. This court does not presume that objections are overruled when the trial court grants a motion for summary judgment. *See Seidner v. Citibank (S.D.) N.A.*, 201 S.W.3d 332, 334–35 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). To preserve error, Melendez needed to request and secure a ruling on her objections. *Id.* She did neither. Therefore, her complaint is forfeited.

dependency continued until the early part of 2010, sometime after her separation with HISD.

Melendez also contends that she is protected by the ADA's safe harbor provision, which covers individuals who have successfully completed a supervised drug rehabilitation program and are no longer engaging in the illegal use of drugs. *See* 42 U.S.C. § 12114(b)(1). This argument is unavailing. The TCHRA does not have a safe harbor provision, and the ADA's version applies "only to individuals who have been drug-free for a significant period of time." *Zenor*, 176 F.3d at 857. The employee in *Zenor* tried unsuccessfully to invoke the safe harbor provision after his five-week abstention from cocaine. If that period of recovery was insufficient under the ADA, then Melendez's abstention of only five days must also fall short. *See id*. at 857–58.

Melendez claims that she was addicted to prescription medication and that she suffered discrimination because of this purported disability. Based on the summary judgment record, we conclude that her condition of addiction was current at the time of her adverse employment action. Therefore, her purported disability was not recognized under the TCHRA, and HISD was entitled to judgment as a matter of law.[2] We need not address the grounds raised in HISD's no-evidence motion for summary judgment. *See FM Props. Operating Co. v. City of Austin*, 22

---

[2] HISD asserted a plea to the jurisdiction at the end of its motion for summary judgment. HISD argued that the trial court lacked jurisdiction because Melendez failed to show a waiver of governmental immunity and because she lacked standing to assert her claims under the TCHRA. Both arguments were premised on the notion that Melendez cannot establish that she is disabled, which, according to HISD, constitutes the absence of a jurisdictional fact. *Cf. State v. Lueck*, 290 S.W.3d 876, 881 (Tex. 2009) (the elements of a whistleblower claim against a governmental entity can be considered to determine both jurisdiction and liability). The trial court granted HISD's motion for summary judgment, but denied its plea to the jurisdiction "in all respects." HISD has not complained of the denial of its plea on appeal. Nevertheless, we conclude that we have jurisdiction over this appeal and that the trial court correctly dismissed Melendez's claims by summary judgment because she is not disabled as a matter of law.

S.W.3d 868, 872 (Tex. 2000) (stating that if the trial court does not specify the basis for granting its summary judgment, then appellate court may affirm if any of the independent grounds for summary judgment is meritorious).

## BERGER'S MOTION FOR SUMMARY JUDGMENT

Melendez sued Berger in her individual capacity, alleging causes of action for wrongful termination, defamation, and intentional infliction of emotional distress. Berger raised several arguments in response, including a defense that Melendez had failed to exhaust her administrative remedies. The exhaustion of remedies is a jurisdictional prerequisite to suit, so we address this issue first. *See O'Neal v. Ector Cnty. Indep. Sch. Dist.*, 251 S.W.3d 50, 51 (Tex. 2008) (per curiam).

The exhaustion of remedies doctrine is codified under section 22.0514 of the Texas Education Code, which provides as follows: "A person may not file suit against a professional employee of a school district unless the person has exhausted the remedies provided by the school district for resolving the complaint." Tex. Educ. Code § 22.0514. It is undisputed that Berger is a "professional employee of a school district." *See id.* § 22.051(a)(1).

HISD has adopted an official Board Policy, which establishes a procedure for the resolution of work-related disputes. This procedure covers a full range of grievances, including those that impact a person's employment status with HISD. By the express terms of the Board Policy, the aggrieved party must file a complaint with her immediate supervisor no later than thirty days after the date of the alleged action or decision that forms the basis of her grievance. If the aggrieved party is not satisfied with her supervisor's resolution, she may pursue a sequence of administrative appeals, with the highest appeal presented to the board of trustees.

Berger attested in her affidavit that Melendez never initiated HISD's grievance procedure. Our record contains no evidence or affidavit controverting this testimony. Berger accordingly asserts that Melendez has not exhausted her administrative remedies and that the trial court lacks jurisdiction to consider her complaints. We agree.

"Requiring exhaustion of administrative remedies is not meant to deprive an aggrieved party of any legal rights. It is meant to provide an orderly procedure by which aggrieved parties may enforce those rights." *Jones v. Dallas Indep. Sch. Dist.*, 872 S.W.2d 294, 296 (Tex. App.—Dallas 1994, writ denied). Melendez did not exhaust, or even initiate, the administrative process in this case. Accordingly, we conclude that the trial court was without jurisdiction to hear her claims. *See* Tex. Educ. Code § 22.0514.

Melendez disputes the jurisdictional bar in this case, claiming that HISD effectively waived the exhaustion requirement when it failed to respond to one of her inquiries regarding employee discipline. Melendez cites no authority for this proposition, and it is contrary to well-established law. *See Janik v. Lamar Consol. Indep. Sch. Dist.*, 961 S.W.2d 322, 324 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) (jurisdiction cannot be conferred by school district's failure to advise terminated employee of the availability of administrative procedures).

Melendez also contends that administrative review was unnecessary, citing an exception for claims that involve parties acting outside the scope of their employment. *See Hitchcock v. Bd. of Trustees, Cypress-Fairbanks Indep. Sch. Dist.*, 232 S.W.3d 208, 218 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (recognizing six exceptions to the exhaustion requirement); *Dotson v. Grand Prairie Indep. Sch. Dist.*, 161 S.W.3d 289, 291–92 (Tex. App.—Dallas 2005, no pet.) (same). Melendez contends that this exception applies because she sued

Berger in her individual capacity and she expressly alleged that Berger was acting outside the scope of her employment.

We reject the suggestion that merely pleading form words, such as a conclusory allegation that Berger was acting "outside the scope of her employment," allows the statutory exhaustion requirement to be circumvented. In assessing subject matter jurisdiction, this court must consider the factual allegations upon which relief is sought, not just the manner in which the cause of action is pleaded. *Cf. Hicks v. Lamar Consol. Indep. Sch. Dist.*, 943 S.W.2d 540, 543 (Tex. App.—Eastland 1997, no writ) (concluding, in appeal from dismissal for lack of subject matter jurisdiction, that the allegations in the petition involved questions of fact rather than questions of law and that a party's characterization of the nature of the allegations is not binding on the court).

Melendez predicates all of her claims on a series of actions that occurred at school and in connection with Berger's official employment duties. The summary judgment evidence conclusively established that Berger, as principal, was responsible for overseeing the conduct of her subordinates, reviewing work-related failures when they occurred, and determining the scope of any appropriate disciplinary response. When Berger met with Melendez after her return from the hospital, all of Berger's actions involved efforts to manage an employee and address her conduct at work. The basis for Melendez's termination claim cannot be separated from the official duties of Berger's employment as principal. The nature of this claim remains the same notwithstanding the allegation of threats; even instances of work-related coercion are amenable to administrative review. *See, e.g.*, *Harlandale Indep. Sch. Dist. v. Rodriguez*, 121 S.W.3d 88, 93 (Tex. App.—San Antonio 2003, no pet.) (teacher should have exhausted his administrative remedies in dispute focusing on allegation that he was coerced to resign); *Muckelroy v.*

14

*Richardson Indep. Sch. Dist.*, 884 S.W.2d 825, 831 (Tex. App.—Dallas 1994, writ denied) (administrative proceeding considered whether teacher was coerced to resign); *see also Lane v. Young*, No. 09-06-260-CV, 2007 WL 63660, at *3–4 (Tex. App.—Beaumont Jan. 11, 2007, no pet.) (mem. op.) (superintendent's conduct was incident to or within the scope of his employment, despite his statement to discharged employee that she should resign to avoid a possibility of ten years' imprisonment for her allegedly criminal acts).

The analysis is similar with respect to Melendez's two defamation claims. In her first claim, Melendez alleged that Berger slandered her by falsely stating to her coworkers that she had forged the signatures of the assistant principals. In her second claim, Melendez complains about similar statements that allegedly were communicated in written form. As with the termination claim, the factual basis for both actions implicates Berger's managerial role as principal and are appropriately addressed through the administrative process. The same is true for Melendez's claim for intentional infliction of emotional distress, which has no independent set of factual allegations.

All of Melendez's claims against Berger arise in the context of an employment dispute at school. Melendez has cited no authoritative case that would excuse her failure to exhaust administrative remedies.[3] Melendez was required to pursue her claims through the administrative process and her failure to do so deprived the trial court of jurisdiction. *See* Tex. Educ. Code § 22.0514. We need not address the merits of Melendez's other issues.

---

[3] Melendez misplaces her reliance on *Jones v. Clarksville Independent School District*, 46 S.W.3d 467, 470 (Tex. App.—Texarkana 2001, pet. denied), because *Jones* addressed exceptions to section 7.057 of the Texas Education Code.

## CONCLUSION

The trial court dismissed all claims that Melendez alleged against HISD and Berger. For the reasons stated above, we affirm the trial court's judgment.


/s/    John Donovan
       Justice


Panel consists of Chief Justice Frost and Justices Boyce and Donovan.