

# NUMBER 13-13-00325-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**LA JOYA INDEPENDENT
SCHOOL DISTRICT, ET AL,**                      **Appellants,**

**v.**

**RUTH VILLARREAL, INDIVIDUALLY
AND RUTH VILLARREAL INSURANCE, LLC**          **Appellees.**

---

### On appeal from the 92nd District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Benavides, Perkes, and Longoria
### Memorandum Opinion by Justice Perkes

Appellant La Joya Independent School District ("the District") and appellants Joel Garcia, Juan Jose "J.J." Garza, Jesus "Chuy" Avendano, and Oscar "Coach" Salinas (collectively "Individual Defendants"), appeal the trial court's order denying appellants' plea to the jurisdiction in a suit brought by appellee Ruth Villarreal, individually and as

Ruth Villarreal Insurance L.L.C. ("Villarreal").[1]  By two issues, appellants argue the trial court lacks jurisdiction over Villarreal's:  (1) breach of contract claim against the District; and (2) tort claims against the Individual Defendants.  We affirm.

## I.  BACKGROUND

In 2005, the District and American Administrative Group, Inc. (AAG) entered a contract whereby AAG would serve as a third party administrator of the District's self-funded health plan for District employees.  The District and AAG were the only signatories to the written contract, and the contract stated the following:

> Beneficiaries.  This Agreement is solely for the benefit of the parties and their successors and permitted assigns, and does not confer any rights or remedies on any other person or entity.

The agreement contained an attached "EXHIBIT 'A,'" which outlined the "costs payable to AAG for the Services rendered by AAG . . . ."  The parties included a provision in "EXHIBIT 'A'" that outlined the applicable "Broker Commissions" for the broker of record, which at that time was Bob Trevino Insurance.

In 2012, the District and AAG, which had undergone a corporate name change to HealthSmart Benefit Solutions, Inc. (HBS), amended the contract and replaced the original "EXHIBIT 'A'" with a new "EXHIBIT 'A'" that reflected the "fees and costs payable by Customer [the District] for the Services rendered . . . ."  Again, the District and HBS included a provision that outlined the commissions due the broker of record:

> Broker Commissions.   As the Broker of Record, Ruth Villarreal shall receive the following:

---

[1]  Named defendants Carmen "Chiquis" Ramirez and Albert Trevino, individually and d/b/a Trevino Insurance, were not parties to the appellants' plea to the jurisdiction and accordingly are not parties to the instant interlocutory appeal.

(a) A monthly fee of $2.35 multiplied by the actual number of participating employees at the beginning of each month for consulting services relating to the Plan.

(b) Stop-loss carrier paid commissions of 5% of gross premiums for the placement of the Customer's specific and aggregate reinsurance converge with stop-loss carrier.

In Villarreal's original petition, Villarreal alleged that in late 2012, the Individual Defendants ran for election to the District school board. According to Villarreal's petition, the Individual Defendants openly expressed their intent to award contracts exclusively to their campaign supporters, including Bob Trevino, whom Villarreal described as a main supporter of the Individual Defendants' campaigns. Villarreal further alleged that one of Trevino's employees publicly acknowledged that the employee gave $15,000 to some of the Individual Defendants in exchange for them replacing Villarreal with Trevino as the insurance broker for the District-HBS contract.

Villarreal's petition stated that in January 2013, the Individual Defendants placed an item on the District board's agenda regarding the agent of record for the District's employee health benefits insurance. At the District's board meeting, the District decided to replace Villarreal with Bob Trevino. Villarreal brought suit against the District for breach of contract and sued the Individual Defendants for tortious interference with a contract and civil conspiracy.

The District and the Individual Defendants filed a plea to the jurisdiction. The District argued that governmental immunity shielded it from Villarreal's breach of contract claim and that section 271.152 of the Texas Local Government Code, which provides a limited waiver of immunity for certain breach of contract claims, did not apply. The

3

Individual Defendants contended that section 22.0511 of the Texas Education Code provided them immunity to Villarreal's tort claims and that Villarreal failed to exhaust administrative remedies as required by section 22.0514 of the Texas Education Code. After a hearing on the plea to jurisdiction, the trial court denied the defendants' plea.

## II. STANDARD OF REVIEW

A plea to the jurisdiction challenges the trial court's subject matter jurisdiction. *City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010) (per curiam). Whether a court has subject matter jurisdiction is a question of law that we review de novo. *Id.* In *Heckman v. Williamson County*, the Texas Supreme Court succinctly summarized the well-settled standard for reviewing jurisdictional pleas:

> When assessing a plea to the jurisdiction, our analysis begins with the live pleadings. We may also consider evidence submitted to negate the existence of jurisdiction—and we must consider such evidence when necessary to resolve the jurisdictional issue. We construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent.
>
> We must grant the plea to the jurisdiction if the plaintiff's pleadings affirmatively negate the existence of jurisdiction. And we must grant the plea if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction.

369 S.W.3d 137, 150 (Tex. 2012) (citations omitted); *see generally Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–28 (Tex. 2004).

## III. GOVERNMENTAL IMMUNITY

By its first issue, the District argues the trial court lacks jurisdiction over the breach of contract claim against the District because the District, as a governmental entity, is immune from suit. The District contends the statutory waiver of governmental immunity

4

is inapplicable because there is no qualifying contract between the District and Villarreal. The District further contends that Villarreal does not qualify as a third-party beneficiary, that third-party beneficiaries are not included in the statutory waiver, and that Villarreal pleaded non-recoverable damages.

## A.	Waiver of Governmental Immunity on Government Contracts

Governmental immunity[2] protects political subdivisions of the State, such as public school districts, from lawsuits for money damages. *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Property/Casualty Joint Self-Insurance Fund*, 212 S.W.3d 320, 324 (Tex. 2006). Governmental immunity can be waived, "but we defer to the Legislature to do so by statute." *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). In enacting section 271.152 of the Texas Local Government Code, the Legislature waived qualifying local government entities' immunity from suit for certain breach of contract claims, providing:

> A local government entity that is authorized by statute or the constitution to enter a contract and that enters a contract subject to this subchapter waives sovereign immunity from suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

Tex. Loc. Gov't Code Ann. § 271.152 (West, Westlaw through 2013 3d C.S.). "According to its plain terms, the statute by clear and unambiguous language waives a governmental entity's immunity from suit for breach of written contract." *Williams*, 353

---

[2] Although often used interchangeably, sovereign immunity and governmental immunity are distinct. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 n.3 (Tex. 2003). Sovereign immunity protects a State and its various divisions from suit and liability. *Id.* "Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts." *Id.* (citations omitted).

S.W.3d at 134. The Supreme Court has identified three elements that must be established for the section 271.152 waiver to apply:

> (1) the party against whom the waiver is asserted must be a "government entity" as defined by section 271.151(3); (2) the entity must be authorized by statute or the Constitution to enter into contracts; and (3) the entity must have in fact entered into a contract that is "subject to this subchapter" as defined by section 271.151[]. TEX. LOC. GOV'T CODE[] §§ 271.151–.152.

*Id.* at 134–35.

The District, as a public school district, is a "governmental entity" under section 271.151(3), *see* TEX. LOC. GOV'T CODE ANN. § 271.151(3)(B) (West, Westlaw through 2013 3d C.S.), and the District does not contend it was not authorized to enter into contracts. The District's assertion that section 271.152 does not apply focuses on the third element—that the contract be one "subject to this subchapter."

To qualify as a contract "subject to this subchapter,"

> (1) the contract must be in writing, (2) state the essential terms of the agreement, (3) provide for goods or services, (4) to the local government entity, and (5) be executed on behalf of the local government entity.

*Williams*, 353 S.W.3d at 135; *see* TEX. LOC. GOV'T CODE ANN. § 271.151. The District argues that the first three elements have not been satisfied, stating "there is no written contract between [Villarreal] and the District for goods or services, nor are there any essential terms to which [Villarreal] can point in the alleged contract . . . ." The District does not deny that there is a written and detailed contract between it and HBS, but the District emphasizes that Villarreal is not a signatory or party to it. In essence, the District argues that Villarreal lacks privity to sue on the contract between the District and HBS

6

and has no independent contract with the District that satisfies the requirements of section 271.151.

Villarreal responds that she is a party to the original contract. In the alternative, Villarreal contends that the section regarding broker commissions renders Villarreal a third-party beneficiary to the contract between the District and HBS and that she is therefore entitled to sue on the contract.

## B. Contract Parties

Villarreal asserts she is a contract party. For support, Villarreal points to a separate lawsuit, filed after this one, in which the District named Villarreal as a defendant on a claim for breach of contract, and the contract in that suit is the same contract as here. In that suit, the District amended its pleadings to remove Villarreal as a defendant, but Villarreal insists the District's original pleading in the other lawsuit constitutes a judicial admission that Villarreal is a contract party.

Our assessment of whether Villarreal is a party to the contract necessarily requires us to interpret the contract. In construing a contract, we must ascertain and give effect to the parties' intentions as expressed in the writing itself. *El Paso Field Servs., L.P. v. Mastec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012); *Italian Cowboy Partners, Ltd. v. Prudential Ins. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). To discern the parties' intent, "we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *El Paso Field*, 389 S.W.3d at 805; *Italian Cowboy*, 341 S.W.3d at 333. We begin with the

contract's express language. *El Paso Field*, 389 S.W.3d at 806; *Italian Cowboy*, 341 S.W.3d at 333.

Whether a contract is ambiguous is a question of law that we decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C*., 352 S.W.3d 445, 449–50 (Tex. 2011); *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 451 (Tex. 2008). If we determine the contract's language can be given a certain or definite legal meaning or interpretation, then the contract is not ambiguous and we will construe it as a matter of law. *El Paso Field*, 389 S.W.3d at 806; *Italian Cowboy*, 341 S.W.3d at 333. "Only where a contract is ambiguous may a court . . . admit extraneous evidence to determine the true meaning of the instrument." *David J. Sacks*, 266 S.W.3d at 451 (quoting *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)).

Turning to the contract, the first lines state that it is an agreement between the District and HBS (formerly known as AAG). Article II of the contract outlines HBS's obligations, and Article III outlines the District's. No other obligations or parties are mentioned. Throughout the contract, the diction suggests there are only two parties to the contract. For example, section 5.1(c) begins, "Neither party," sections 6.1(a) and 6.1(c) begin, "Both parties," section 7.4 begins, "If either party," and section 9.11 begins, "Wherever under this Agreement either party." Section 9.9 describes the "<u>Relationship of the Parties</u>," and discusses only the District and HBS. Moreover, the 2012 amendment notes that it amends an agreement "by and between" the District and HBS. The District and HBS are the only two signatories to the contract.

8

The contract language regarding the contracting parties is unambiguous. *See Anglo-Dutch Petroleum*, 352 S.W.3d at 449–50 (deciding ambiguity inquiry by looking to the entire contract); *David J. Sacks*, 266 S.W.3d at 451 (same). Accordingly, we need not consider the extraneous evidence of the District's pleadings in a subsequently filed case. *See David J. Sacks*, 266 S.W.3d at 451 (holding court does not admit extraneous evidence to interpret unambiguous contract provisions). Based on the contract's express language, and upon viewing the entire contract, we conclude that the District and HBS are the only two contract parties, and that Villarreal is not a party to the contract.

## C.   Third-Party Beneficiaries

Villarreal contends she is an intended third-party beneficiary of the contract because the 2012 amendment to the fees exhibit identifies Villarreal as the broker of record and outlines how Villarreal's commissions would be calculated.

### 1.   Section 271.152 of the Texas Local Government Code Waiver Extends to Third-Party Beneficiaries.

As a preliminary matter, the District asserts that section 271.152 does not waive immunity for claims brought by third party beneficiaries. *See* TEX. LOC. GOV'T CODE ANN. § 271.152. Although section 271.152 does not expressly mention third-party beneficiaries, we are not convinced that it excludes third-party standing. *See id.*

In interpreting a statute, our primary objective is to give effect to Legislature's intent. TEX. GOV'T CODE ANN. § 312.005 (West, Westlaw through 2013 3d C.S.); *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet*, 356 S.W.3d at 411;

*see City of Waco v. Kelley*, 309 S.W.3d 536, 542 (Tex. 2010). A statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language. TEX. GOV'T CODE ANN. § 311.034 (West, Westlaw through 2013 3d C.S.).

As quoted above, section 271.152 of the Texas Local Government Code waives sovereign immunity "for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." TEX. LOC. GOV'T CODE ANN. § 271.152. We consider the following reasoning made by our sister appellate court persuasive:

> By its own terms, section 271.152's waiver is not limited only to suits brought by signatory parties—that is, to contractors who directly contract with the local government entity. Instead, section 271.152 waives immunity for a *class of suits*—suits for the purpose of adjudicating a claim for breach of contract subject to subchapter I—without restricting which parties can bring the suit. The logical implication of such statutory language is that when, as here, a plaintiff has standing to sue a local government entity for breach of a "contract subject to subchapter I," section 271.172 waives sovereign immunity "for the purposes of adjudicating that claim."

*First-Citizens Bank & Trust Co. v. Greater Austin Area Telecomms. Network*, 318 S.W.3d 560, 567 (Tex. App.—Austin 2010, pet. dism'd).

"Texas law recognizes that third parties have standing to recover under a contract that is clearly intended for their direct benefit." *Williams*, 353 S.W.3d at 145. We see nothing in section 271.152 that abrogates this fundamental principle of contract law. *See* TEX. LOC. GOV'T CODE ANN. § 271.152. "Accordingly, when a governmental entity and a contracting party enter into a contract subject to subchapter I and denominate a third-party beneficiary of that contract, the third-party beneficiary's claim for breach of contract

10

falls within the waiver of immunity authorized under section 271.152." *Galveston Indep. Sch. Dist. v. Clear Lake Rehab. Hosp.*, *L.L.C.*, 324 S.W.3d 802, 810 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see First-Citizens Bank*, 318 S.W.3d at 567. Having determined that a third-party beneficiary of a contract is not barred by section 271.152 from bringing suit on a contract, we now assess whether Villarreal is a third-party beneficiary to the contract between the District and HBS.

### 2. Applicable Law on Third-Party Beneficiaries

A third party may enforce a contract it did not sign when the parties to the contract entered the agreement with the clear and express intent to directly benefit the third party. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011); *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). A third-party beneficiary need not be the sole beneficiary to the contract. *Stine v. Stewart*, 80 S.W.3d 586, 591 (Tex. 2002) (per curiam). Only an intended third-party beneficiary may enforce a contract; an incidental beneficiary cannot. *Tawes*, 340 S.W.3d at 425; *MCI*, 995 S.W.2d at 651.

To qualify as an intended third-party beneficiary, a party must show that it is either a "donee" or "creditor" beneficiary of the contract. *Stine*, 80 S.W.3d at 589; *MCI*, 995 S.W.2d at 651. One is a donee beneficiary if the performance promised will, when rendered, come to him as a pure donation. *Stine*, 80 S.W.3d at 589; *MCI*, 995 S.W.2d at 651. A creditor beneficiary receives the contracted performance in satisfaction of a legal duty owed to him by the promisee. *Stine*, 80 S.W.3d at 589; *MCI*, 995 S.W.2d at 651. This duty may be indebtedness, contractual obligation, or some other legally enforceable commitment owed to the third party. *Stine*, 80 S.W.3d at 589; *MCI*, 995

11

S.W.2d at 651. Here, Villarreal argues she is a creditor beneficiary to the contract between the District and HBS.

Our analysis of whether Villarreal is a third-party beneficiary requires us to, again, interpret the contract. As already observed, whether a contract is ambiguous is a question of law that we decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Anglo-Dutch Petroleum*, 352 S.W.3d at 449–50; *David J. Sacks*, 266 S.W.3d at 451. When a contract is unambiguous, the construction of it is a question of law that we review de novo. *Tawes*, 340 S.W.3d at 425 (citing *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 252 (Tex. 2009); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).

"In determining whether a third party can enforce a contract, the intention of the contracting parties is controlling." *MCI*, 995 S.W.2d at 651. "When discerning the contracting parties' intent, courts must examine the entire agreement and give effect to each provision so that none is rendered meaningless." *Tawes*, 340 S.W.3d at 425 (citing *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Stine*, 80 S.W.3d at 589). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.* (quoting *Coker*, 650 S.W.2d at 393). "[A] presumption exists that parties contracted for themselves unless it 'clearly appears' that they intended a third party to benefit from the contract." *MCI*, 995 S.W.2d at 651. "All doubts must be resolved against conferring third-party beneficiary status." *Tawes*, 340 S.W.3d at 425.

### 3. Villarreal is a Third-Party Beneficiary.

12

According to Villarreal, a finding that she is not a third-party beneficiary renders meaningless the section of the contract covering broker's commissions. The District argues that a finding that Villarreal is a third-party beneficiary undermines the contract's express exclusion of third-party beneficiaries—"This Agreement is solely for the benefit of the parties and their successors and permitted assigns, and does not confer any rights or remedies on any other person or entity." Neither party claims the contract is ambiguous. Our task is to seek an interpretation of the contract as a whole that renders neither contractual provision meaningless. *See Tawes*, 340 S.W.3d at 425.

Construing the two contract provisions together, the contract excludes all third-party beneficiaries except Villarreal. The contract exempts Villarreal from exclusion by specifically naming Villarreal as the owed recipient of commissions for broker services. *See MCI*, 995 S.W.2d at 651 (holding that presumption against third-party beneficiaries is overcome when it clearly appears that the contracting parties intended a third party to benefit from the contract). This construction preserves meaning for the beneficiary-exclusion provision, precluding claims by other potential third parties that would lack the express contractual provision given Villarreal. At the same time, this construction effectuates the parties' manifest intent to satisfy their obligation to compensate Villarreal for her broker services. *See Stine*, 80 S.W.3d at 589 (defining a creditor beneficiary as the recipient of a contracted benefit that satisfies indebtedness, a contractual obligation, or some other legally enforceable commitment owed that party); *MCI*, 995 S.W.2d at 651 (same).

**D.    Failure to Plead Recoverable Damages is not a Jurisdictional Defect.**

13

The District also premises its immunity from Villarreal's breach-of-contract claim on the contention that Villarreal failed to plead recoverable damages under Texas Local Government Code section 271.153.   *See* TEX. LOC. GOV'T CODE ANN. § 271.153 (West, Westlaw through 2013 3d C.S.) (limiting the types of damages permitted under a section 271.152 waiver).   Contrary to the District's belief that section 271.153 creates an additional jurisdictional requirement, the Texas Supreme Court has determined, "The purpose of section 271.153 is to limit the amount due by a governmental agency on a contract once liability has been established, not to foreclose the determination of whether liability exists."   *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 840 (Tex. 2010);[3] *see Santa Rosa Indep. Sch. Dist. v. Rigney Constr. & Dev., LLC*, No. 13-12-00627-CV, 2013 WL 2949566, at *5 (Tex. App.—Corpus Christi June 13, 2013, pet. denied) (mem. op.).   Thus, section 271.153 is not a proper basis for granting a plea to the jurisdiction.   *See Kirby Lake*, 320 S.W.3d at 840; *Santa Rosa Indep. Sch. Dist.*, 2013 WL 2949566 at *5; *see also City of N. Richland Hills v. Home Urban Partners*, 340 S.W.3d 900, 909–10 (Tex. App.—Fort Worth 2011, no pet.) (op. on reh'g); *City of San Antonio ex. rel. San Antonio Water Sys. v. Lower Colo. River Auth.*, 369 S.W.3d 231, 236–38 (Tex. App.—Austin 2011, no pet.); *Roma Indep. Sch. Dist. v. Ewing Constr. Co.*, No. 04-12-00035-CV, 2012 WL 3025927, at *4 (Tex. App.—San Antonio July 25, 2012, pet. denied) (mem. op.).

---

[3] The District mistakenly relies on language from *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 413 (Tex. 2011), for the assumption that the Texas Supreme Court has returned to its pre-*Kirby Lake* position that damages pleadings under section 271.153 are jurisdictional.   In *Sharyland Water Supply*, the section 271.153 issue was the propriety of damages awarded by a jury, not the role of section 271.153 in determining jurisdiction.   *See id.* at 412–13.

**E.  Summary**

Villarreal is not a party to the contract between the District and HBS, but that contract manifests the parties' intent to confer a direct benefit to Villarreal for her broker services.   *See MCI*, 995 S.W.2d at 651 (holding contracting parties' intent is the controlling inquiry).   As a third-party beneficiary, Villarreal's breach-of-contract claim falls under the waiver of immunity authorized under section 271.152 of the Texas Local Government Code.   *See Galveston Indep. Sch. Dist*, 324 S.W.3d at 810; *First-Citizens Bank*, 318 S.W.3d at 567.   Villarreal's breach-of-contract claim is not foreclosed by section 271.153 of the Texas Local Government Code.   *See Kirby Lake*, 320 S.W.3d at 840; *see also Santa Rosa Indep. Sch. Dist.*, 2013 WL 2949566 at *5.   We overrule the District's first issue.

## IV.  STATUTORY IMMUNITY OF SCHOOL DISTRICT EMPLOYEES

By their second issue, appellants contend the trial court lacks jurisdiction over Villarreal's tort claims against the Individual Defendants because the Individual Defendants are immune under section 22.0511 of the Texas Education Code, which provides immunity from liability "for any act that is incident to or within the scope of duties" of the Individual Defendants' professional positions.   *See* TEX. EDUC. CODE ANN. § 22.0511(a) (West, Westlaw through 2013 3d C.S.).   Villarreal responds that the Individual Defendants' intentional tortious and criminal acts fell outside the scope of their professional duties and thus are not protected by the statutory immunity.   Appellants also assert Villarreal failed to exhaust administrative remedies, a jurisdictional prerequisite under Texas Education Code section 22.0514.   *See* TEX. EDUC. CODE ANN. § 22.0514

15

(West, Westlaw through 2013 3d C.S.) ("A person may not file suit against a professional employee of a school district unless the person has exhausted the remedies provided by the school district for resolving the complaint.").

## A. Statutory Immunity

Under section 22.0511:

A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

*Id.* § 22.0511. A school board member is a professional employee of the school district. TEX. EDUC. CODE ANN. § 22.051(a)(5) (West, Westlaw through 2013 3d C.S.).

The scope of immunity in section 22.0511 is broad, protecting not only actions falling within the scope of the employee's duties but also those incident to the employee's duties. *See id.* § 22.0511. Our sister appellate courts have determined that if an act falls within or incident to authorized duties, then immunity applies, regardless of whether the act otherwise violates an employer's code of ethics, *see Kobza v. Kutac*, 109 S.W.3d 89, 94 (Tex. App.—Austin 2003, pet. denied), or even city or state law, *see Pierson v. Houston Indep. Sch. Dist.*, 698 S.W.2d 377, 380–81 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (analyzing predecessor statute), *disapproved of on other grounds by Travis v. City of Mesquite*, 830 S.W.2d 94, 103 (Tex. 1992) (emphasizing defendant has burden to prove good faith for common-law official immunity). If the act falls neither within nor incident to the scope of the employee's duties, the statutory immunity does not cover the act. *See Robinson v. Brannon*, 313 S.W.3d 860, 866 (Tex. App.—Houston

16

[14th Dist.] 2010, no pet.) (holding that employees' acts of making harassing phone calls and sending threatening text messages and defamatory emails were outside the scope of employment and therefore outside the scope of the section 22.0511 immunity).

Section 22.0511 does not define "scope of duties." *See* TEX. EDUC. CODE ANN. § 22.0511. In other cases, our sister appellate courts have been able to rely on the common-law principles of respondeat superior,[4] but these are unhelpful here because the Individual Defendants' authority does not flow from a supervisor. Their authority is outlined by statute. Relevant here, the Texas Education Code gives school board members the general authority to "govern and oversee" the management of public schools of the board's district. TEX. EDUC. CODE ANN. § 11.151(b) (West, Westlaw through 2013 3d C.S.). Pursuant to that oversight, the board may enter into contracts. *See* TEX. EDUC. CODE ANN. § 11.1511(c)(4) (West, Westlaw through 2013 3d C.S.).

## B. Discussion

The Individual Defendants characterize the decision to replace Villarreal generally, describing it as a simple contract decision, which would fall within the scope of the Individual Defendants' professional duties. *See id.* Villarreal asserts the Individual Defendants did not simply make a detached business decision; Villarreal claims the Individual Defendants, aware of Villarreal's existing contract rights, planned and decided to target her contract rights in satisfaction of an accepted bribe—conduct that would not

---

[4] *See Robinson v. Brannon*, 313 S.W.3d 860, 866 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Whether one is acting within the scope of his or her employment depends on whether the general act from which the injury arose was in furtherance of the employer's business and for the accomplishment of the object for which the employee was employed." (citing *Leadon v. Kimbrough Bros. Lumber Co.*, 484 S.W.2d 567, 569 (Tex. 1972); *Chesshir v. Sharp*, 19 S.W.3d 502, 504–05 (Tex. App.—Amarillo 2000, no pet.)); *Kobza v. Kutac*, 109 S.W.3d 89, 93 (Tex. App.—Austin 2003, pet. denied).

fall within or incident to the Individual Defendants' statutory duties.  *See Robinson*, 313 S.W.3d at 866 (providing example of conduct that exceeded the immunity coverage of section 22.0511).   For the purposes of the jurisdictional issue, we take as true Villarreal's factual assertions.  *See Heckman*, 369 S.W.3d at 150.   Accordingly, we hold section 22.0511 does not preclude the trial court's jurisdiction over Villarreal's tort claims against the Individual Defendants.  *See Robinson*, 313 S.W.3d at 866.

## C.   Villarreal is not Required to Exhaust Administrative Remedies.

The Individual Defendants also contend the trial court lacked jurisdiction over Villarreal's tort claims because Villarreal failed the statutory prerequisite of exhausting administrative remedies.  *See* TEX. EDUC. CODE ANN. § 22.0514.  Villarreal disagrees that section 22.0514 applies, arguing that the tort claims are against the Individual Defendants in their individual, rather than official, capacities because their acts were not incident to or within the scope of their duties.   It is undisputed Villarreal never attempted the district's administrative process.

Texas law has long recognized that exhaustion of administrative remedies is unnecessary when a plaintiff's claims involve the school district employees acting outside the scope of their employment.  *See, e.g., State Line Consol. Sch. Dist. No. 6 of Parmer County v. Farwell Indep. Sch. Dist.*, 48 S.W.2d 616, 617 (Tex. Comm'n App. 1932, holding approved).   More recently, this fundamental principle has piloted case law on section 7.057 of the Texas Education Code.  *See, e.g., Hitchcock v. Bd. of Trs. Cypress-Fairbanks Indep. Sch. Dist.*, 232 S.W.3d 208, 218 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Dotson v. Grand Prairie Indep. Sch. Dist.*, 161 S.W.3d 289, 291–92 (Tex.

18

App.—Dallas 2005, no pet.)). Our sister appellate courts have considered this principle in relation to section 22.0514 but have not had occasion to apply it. *See Melendez v. Houston Indep. Sch. Dist.*, 418 S.W.3d 701, 710 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Johnson v. Tims*, No. 10-05-00006-CV, 2005 WL 1531336, at *1 (Tex. App.—Waco June 29, 2005, pet. denied) (mem. op.). In those cases, the petitioners failed to establish that the challenged conduct fell outside the scope of employment. *See Melendez*, 418 S.W.3d at 710–11; *Johnson*, 2005 WL 1531336, at *1. In this case, however, we have already held that Villarreal brings suit for actions that would not be incident to or within the scope of employment duties.

We stress that "[w]e reject the suggestion that merely pleading form words, such as a conclusory allegation that [a professional employee] was acting 'outside the scope of [his or] her employment,' allows the statutory exhaustion requirement to be circumvented." *See Melendez*, 418 S.W.3d at 710. We consider the manner in which the cause of action was pleaded and analyze the factual allegations upon which relief is sought to assess subject matter jurisdiction. *See id.* Here, because Villarreal's claims and alleged facts address actions falling outside the scope of the Individual Defendants' duties, we hold that Villarreal's suit is against the Individual Defendants in their individual capacities, which does not require the exhaustion of administrative remedies.

### D.      Summary

Construing the factual assertions in Villarreal's favor, *see Heckman*, 369 S.W.3d at 150, we conclude that the Individual Defendants' acts were neither incident to nor within

the scope of their employment. Accordingly, the professional immunity of section 22.0511 does not extend to their acts, and Villarreal was not required to exhaust administrative remedies against the Individual Defendants in their individual capacities. We overrule appellants' second issue.

## V.  CONCLUSION

We affirm the trial court's order denying the District's plea to the jurisdiction.


GREGORY T. PERKES
Justice

Delivered and filed the
3rd day of July, 2014.