# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00025-CV

**202 N LBJ Venture Group, LP, Appellant**

**v.**

**Paul Kolaj and Modesta Kolaj, Appellees**

### FROM THE 207TH DISTRICT COURT OF HAYS COUNTY
### NO. 21-2211, THE HONORABLE SHERRI TIBBE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

202 N LBJ Venture Group, LP (LBJ Venture) sued Paul Kolaj and Modesta Kolaj (collectively, Kolaj) for breach of a commercial lease. After a bench trial, the trial court rendered judgment against Kolaj and awarded LBJ Venture damages and pre- and post-judgment interest but denied LBJ Venture's request for attorneys' fees. In three issues, LBJ Venture contends that the trial court erred by (1) not awarding LBJ Venture damages equivalent to all rent due under the ten-year lease term, (2) determining that LBJ Venture was not entitled to recover certain damages sought related to improvements to the leased property, and (3) failing to award it any attorneys' fees. We will affirm in part and reverse and remand in part.

## BACKGROUND

LBJ Venture owns a mixed-use commercial and residential building located in downtown San Marcos. In February 2021, LBJ Venture and Kolaj executed a commercial lease

for approximately 1,400 square feet of space in the Property (the Leased Premises). The lease permitted Kolaj to use the Leased Premises for the operation of a restaurant. In June 2021, LBJ Venture and Kolaj executed an amendment to the lease. The amendment added an additional 570 square feet in the building (the Additional Leased Premises) to the lease and increased the monthly rent to reflect the additional square footage. The amendment provided that the amended lease's effective date was June 7, 2021; set the Rent Commencement Date as January 1, 2021, for the Leased Premises and August 1, 2021, for the Additional Leased Premises; and abated the base rent for the Leased Premises, but not the Additional Leased Premises, until September 1, 2021.

Relevant to this appeal, the lease provided that:

> Tenant agrees to install in the Premises a commercial kitchen, with such commercial kitchen being constructed and installed in accordance with all local, state, and federal health, safety, fire, and building codes. Tenant agrees and represents to Landlord that such improvements, including the equipment therefor, is estimated to be valued at $300,000, and that such representation by Tenant to Landlord is a material representation and consideration for Landlord entering into this Lease with Tenant. Tenant may, but is not obligated to, exceed this amount at its own discretion. All other conditions pertaining to the Tenant-Funded Improvements are set forth in Exhibit A. Tenant agrees that even in the event Tenant has not completed the Tenant-Funded Improvements by July 31, 2021, the abatement of Base Rent shall not be extended under the terms of the Lease.

The referenced "Exhibit A" provided that "Tenant will complete the Tenant-Funded Improvements in Section 6.03(a) of the Lease at Tenant's sole expense, with a minimum value of $300,000, including the cost(s) associated with the Design Plan (as defined herein) and the Construction Drawings (as defined herein) and the equipment necessary for the Tenant-Funded Improvements." Section 10.02(b) of the lease provided that, in the event of default, LBJ Venture had the option to:

terminate Tenant's right of possession (but not this Lease) and may repossess the Leased Premises by forcible entry or detainer suit or otherwise, without demand or notice of any kind to Tenant and without terminating this Lease, in which event Landlord may relet the Leased Premises for the account of Tenant for such rent and upon such terms as shall be satisfactory to Landlord, in Landlord's sole and absolute discretion. [] If Landlord does not relet the Leased Premises, then Tenant shall pay to Landlord as damages a sum equal to the amount of the Rent and all other sums due hereunder, plus the cost of recovering possession of the Leased Premises, plus interest on all of the foregoing at the Past Due Rate. If the Leased Premises are relet and a sufficient sum is not realized from such reletting [] to satisfy the Rent provided for in this Lease to be paid, plus all other sums owed by Tenant to Landlord, plus interest on all of the foregoing at the Past Due Rate, then Tenant shall satisfy and pay any such deficiency to Landlord upon demand therefor from time to time, and Tenant agrees that Landlord may file suit to recover any sums falling due under the terms of this paragraph from time to time, and that no delivery or recovery of any portion due Landlord hereunder shall be any defense to any subsequent action brought for any amount not theretofore reduced to judgment in favor of Landlord, nor shall such reletting be construed as an election on the part of the Landlord to terminate this Lease unless written notice of such intention is given to Tenant by Landlord.[1]

Finally, section 12.01 of the lease provided that:

if any action for breach of or to enforce the provisions of this Lease is commenced, the court in such action, upon final adjudication, shall award to the party in whose favor a judgment is entered, a reasonable sum as attorneys' fees and costs. The losing party in such action shall pay such reasonable attorneys' fees and costs.

In November 2021, LBJ Venture sent Kolaj a letter informing him that due to his default of the lease, it was exercising its right, under section 10.02(b) of the lease, to terminate Kolaj's possession of the leased premises, but not the lease, and to take possession of the leased premises and attempt to relet them.

---

[1] The lease included a provision requiring both LBJ Venture and Kolaj to "use commercially reasonable efforts to mitigate any damages resulting from a default of the other party under this Lease."

LBJ Venture filed its original petition against Kolaj, asserting a cause of action for breach of contract and requesting an award of attorneys' fees pursuant to both Texas Civil Practices and Remedies Code section 38.001 and section 12.01 of the lease. After the parties engaged in discovery, LBJ Venture filed a motion for partial summary judgment as to the issue of Kolaj's liability only and sought to recover attorneys' fees and costs "incurred to date as required under the terms of the lease." Kolaj filed a response to the summary-judgment motion in which he stated that he did "not contest a judgment that [he] breached the Lease, although the amount of alleged damages remains an open question." Kolaj further asserted that LBJ Venture was not entitled to an attorneys' fee award at that time because an interim award was contrary to section 12.01 of the lease, which provided that, in an action to enforce the terms of the lease, "the court in such action, *upon final adjudication*, shall award to the party in whose favor a judgment is entered, a reasonable sum as attorneys' fees and costs." At a hearing on the motion for partial summary judgment, the parties confirmed that Kolaj was not contesting liability and that the only remaining issues were the amount of damages and attorneys' fees. The court stated: "I think it's a little premature to award the fees. I'm happy to give you a setting for a bench trial." On August 24, 2022, the trial court signed an order granting LBJ Venture's motion for summary judgment "as to [Kolaj's] liability to [LBJ Venture]."

On November 2, 2022, the trial court conducted a bench trial on the issue of damages to which LBJ Venture was entitled under the lease. After trial, LBJ Venture moved for judgment in the amount of approximately $538,000 in unpaid rent; $300,000 that Kolaj agreed to spend to install a commercial kitchen in the leased premises; and $67,000 in attorneys' fees. LBJ Venture took the position that it was entitled to "accelerate" the rent due under the lease and obtain a judgment in an amount equal to the rent that would be due over the course of the

4

ten-year lease.[2] LBJ Venture also maintained that it was entitled to the $300,000 that Kolaj had agreed to spend to install a commercial kitchen. Kolaj countered that section 10.02(b) of the lease did not permit LBJ Venture to accelerate rent but, instead, provided that LBJ Venture could collect unpaid rent as it became due under the lease, relet the premises "for the account of [Kolaj]," and recover from Kolaj any deficiency between the rent due under the lease and the rent obtained from reletting the premises. Kolaj argued that under section 10.02(b), LBJ Venture could demand any such deficiency from Kolaj "from time to time" and could file suit to recover those amounts due "from time to time." Kolaj maintained that, in this suit, LBJ Venture was entitled to a judgment in the amount of $96,072.49, composed of (1) $78,739.31 in unpaid rent from the Rent Commencement Date through the time of trial, offset by the amount of rent received by the new tenants in the Leased Premises and the Additional Leased Premises; (2) $3,469.43 in late fees; and (3) $13,863.75 in pre-judgment interest.

After considering the evidence presented at trial and the parties' post-trial motions and briefing, the trial court rendered judgment in the amount of $96,072.49, as Kolaj advocated, and awarded "no amount ($0)" to LBJ Venture for "reasonable and necessary attorneys' fees and costs." The judgment also awarded post-judgment interest at 18% per annum from the date of the judgment until its satisfaction. LBJ Venture then perfected this appeal, arguing in three issues that (1) the trial court erred in its damages calculation; (2) the trial court erred by not including in the damages award an additional $300,000—the amount Kolaj agreed to spend to

---

[2] LBJ Venture stated that it would offset that amount by the approximately $120,000 it expected to generate from two leases it entered into that covered the Leased Premises and the Additional Leased Premises for terms of one year and three years, respectively. LBJ Venture did not include as an offset any other amounts it might generate from future leases of either the Leased Premises or the Additional Leased Premise.

5

install a commercial kitchen in the Leased Premises; and (3) the trial court abused its discretion by awarding zero dollars for reasonable and necessary attorneys' fees.

## DISCUSSION

*Damages Calculation*

In its third issue, which we address first, LBJ Ventures argues that, upon Kolaj's breach of the lease, it was entitled to "accelerate" the rent due under the lease and recover as its damages the total amount of the rent payments that otherwise would have been due throughout the life of the ten-year lease. LBJ Venture asserts that the trial court misconstrued the lease when it awarded as damages only the rent due through the time of trial. LBJ Ventures bases its position on its interpretation of section 10.02(b) of the lease, the landlord's remedy it availed itself of when Kolaj breached the lease. Thus, the issue before us is the proper construction of section 10.02(b) of the lease. Our primary objective, then, is to ascertain the true intent of the parties as expressed in the lease. *National Union Fire Ins. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995). If the terms used in the contract can be given a definite or certain legal meaning, the contract is unambiguous and will be enforced as written. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 451 (Tex. 2008); *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). In construing the contract's language, we must apply the ordinary and generally accepted meaning of the words used unless the contract indicates that the language used is intended to impart a technical or different meaning. *American Mfrs. Mut. Ins. v. Schaefer*, 124 S.W.3d 154, 158 (Tex. 2003). In addition, we must give effect to all provisions so that none are rendered meaningless. *Id.* at 157. An ambiguity does not arise simply because the parties offer conflicting interpretations of the contract language. *National Union*, 907 S.W.2d at 520. When interpreting

a contract, we must consider the entire writing in an effort to give effect to all provisions. *In re Service Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011) (orig. proceeding).

Section 10.01(b) provides that, upon the tenant's breach, the landlord may terminate tenant's right of possession, but not the lease, repossess the leased premises, and relet the leased premises "for the account of [t]enant" for the rent and on terms satisfactory to the landlord. Section 10.01(b) states:

> *If Landlord does not relet the Leased Premises*, then Tenant shall pay to Landlord as damages *a sum equal to the amount of the rent and other sums due hereunder,* plus the cost of recovering possession of the Leased Premises plus interest on all of the foregoing at the Past Due Rate.
>
> *If the Leased Premises are relet and a sufficient sum is not realized from such reletting . . . to satisfy the Rent provided for in this Lease* to be paid, plus all other sums owed by Tenant to Landlord, plus interest on all the foregoing at the Past Due Rate, *then Tenant shall satisfy and pay any such deficiency to Landlord upon demand and thereafter from time to time, and Tenant agrees that Landlord may file suit to recover any sums falling due under the terms of this paragraph from time to time*, and that no delivery or recovery of any portion due Landlord hereunder shall be any defense to any subsequent action brought for any amount not theretofore reduced to judgment in favor of Landlord nor shall such reletting be construed as an election on the part of Landlord to terminate the Lease.

(Emphasis supplied). As an important initial matter, when the landlord elects to proceed under section 10.02(b), the lease remains in full force and effect, including its provisions regarding the amount and timing of rent due under the lease. Section 10.02(b) addresses two possible scenarios, either or both of which may occur at different times during the remaining term of the lease. In the first, the landlord does not relet the leased premises, presumably after complying with its obligation "to use commercially reasonable efforts to mitigate any damages resulting from a default of the other party under this Lease." In that case, the tenant is obligated to pay the landlord the amount of the rent and other sums "due hereunder"; i.e., to make rent payments in

7

the amounts and at the times that they would be due under the terms of the lease, in this case monthly. In the second scenario, the landlord can relet the premises, and the tenant is obligated to make up any deficiency between the amount the landlord receives from the new tenant and the amount the original tenant was obligated to pay under the terms of the lease. The deficiency, if any, must be paid "to Landlord upon demand and thereafter from time to time" and, in the event the tenant fails to make these payments, the landlord "may file suit to recover any sums falling due [] from time to time." Nothing in section 10.02(b) permits the landlord to accelerate the rent payments due under the lease and sue to collect the balance of rent for the ten-year lease term. In fact, the language in this section of the lease providing for demand "from time to time" and allowing for suits to recover balances "falling due [] from time to time" is inconsistent with LBJ Venture's position that it could accelerate the rent and seek to recover the total amount as it has done in the present case.

We note that a different section of the lease, section 10.01(a), does provide an option for the landlord to, in effect, accelerate the rent due by terminating the lease and suing to recover the "balance of all of the Rent under this Lease for the remainder of the Lease Term." Even if LBJ Venture had opted to avail itself of this remedy, however, it would not have been entitled to recover an amount equal to the sum of all future rent payments for the entire lease term. Rather, section 10.01(a) provides that the landlord may recover "*the present value (discounted at the rate of eight percent (8%) per annum of the balance of all of the Rent under this Lease for the remainder of the Lease Term, less the present value (discounted at the same rate) of the fair market rental value of the Leased Premises for said period.*" Both section 10.02(a) and 10.02(b) include mechanisms to minimize the likelihood that the tenant would have to pay damages exceeding those the landlord actually suffers. That is, the landlord cannot collect

8

the entire sum of the rent due under the lease from the breaching tenant without offsetting that amount by either the present value of the fair market value of the leased premises or by the amount of rent received from a replacement tenant.

The trial court did not err in determining that LBJ Venture was not entitled to recover, in this suit, the entire amount of rent due over the life of the ten-year lease. We therefore overrule the third issue.

In its second issue, LBJ Venture asserts that the trial court erred by not including in the damages award an additional $300,000, representing the amount that Kolaj had agreed in section 6.03(a) of the lease to spend to install a commercial kitchen in the Leased Premises. LBJ Venture maintains that it is entitled to these additional damages for Kolaj's breach of the lease by not installing the kitchen. We first note that nowhere in section 10 of the lease, which sets forth the remedies available to the landlord for the tenant's breach, does it provide for the landlord to recover as part of its damages the amount of money Kolaj agreed to spend to install the commercial kitchen. On appeal, LBJ Venture asserts that it is nevertheless entitled to an additional $300,000 because Kolaj's agreement to spend a minimum of $300,000 to install a kitchen was a "material" provision in the lease in exchange for which it made certain rent concessions, and it is entitled to the benefit of its bargain. *See MSW Corpus Christi Landfill, Ltd. v. Gulley-Hurst, L.L.C.*, 664 S.W.3d 102, 106-07 (Tex. 2023) ("The purpose of benefit of the bargain damages is to place the seller 'in the same economic position he would have been in had the contract been performed.'"); *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 775 (Tex. 2009) (benefit-of-the bargain measure of damages requires evidence of difference between value represented and value received). Even assuming that LBJ Venture would be entitled to some damages to compensate it for the fact that no commercial kitchen was installed,

9

we disagree that LBJ Venture is entitled to the total amount Kolaj agreed to spend to install it. The term of the lease was for ten years and gave Kolaj the option to extend the lease term for two additional five-year periods. At the conclusion of the lease term, therefore, the commercial kitchen would be at least ten years old. At trial, Kolaj's counsel attempted to elicit testimony from LBJ Venture's sole witness regarding the value of a ten-year-old commercial kitchen. LBJ Venture's witness was unable to provide any testimony regarding what the value of the kitchen would have been at the end of the lease term. Nor was LBJ Venture's witness able to opine as to whether, or to what extent, the presence of a commercial kitchen would have enhanced the value of the Leased Premises. There was no evidence of what the value of the commercial kitchen would be to LBJ Venture had the ten-year lease agreement not been breached. Thus, even were LBJ Venture legally entitled to it, there was no evidence at trial to support an award of benefit-of-the bargain damages to LBJ Venture. The trial court did not err in failing to award LBJ Venture $300,000 in damages resulting from Kolaj's breach. We overrule the second issue.

### Attorneys' fees

In its first issue, LBJ Venture asserts the trial court abused its discretion by failing to award any attorneys' fees on its breach of contract claim. As a general rule, litigants in Texas are responsible for their own attorneys' fees and expenses in litigation. *Ashford Partners, Ltd. v. ECO Res., Inc.*, 401 S.W.3d 35, 41 (Tex. 2012). Under Texas law, a court may award attorneys' fees only when authorized by statute or by the parties' contract. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). Whether a party is entitled to seek an award of attorneys' fees is a question of law that we review de novo. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). The Texas Civil Practice and Remedies Code provides that "[a]

10

person may recover reasonable attorney's fees from an individual . . . in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code § 38.001(b)(8). To obtain an award of attorney's fees under section 38.001, "a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997).

However, "[p]arties are free to contract for a fee-recovery standard either looser or stricter than Chapter 38's." *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009). When parties include such a provision in a contract, the language of the contract controls, rather than the language of the statute. *Id.* at 654-56. Here, the lease includes section 12.01, which provides that if any action is commenced for breach of the lease, the court *shall*, upon final adjudication, award the party in whose favor judgment is entered, a reasonable sum as attorneys' fees and costs. The meaning of the contract is clear: having awarded a judgment in favor of LBJ Venture, the trial court was required to award it "a reasonable sum as attorneys' fees and costs." The trial court's failure to award any attorneys' fees was contrary to the parties' contract and an abuse of discretion. *See David J. Sacks, P.C.*, 266 S.W.3d at 451 (if terms used in contract can be given definite or certain legal meaning, contract is unambiguous and will be enforced as written).

LBJ Venture asserts that this Court should render judgment awarding it $67,121.55 in attorneys' fees and costs based on the affidavit of its counsel attesting to the reasonableness of that amount. Relying on *Ragsdale v. Progressive Voters League*, LBJ Venture argues that the court should render judgment in that amount because the evidence on attorneys' fees was uncontroverted and thus established as a matter of law. *See Ragsdale*, 801 S.W.2d 880, 882 (Tex. 1990) (holding that court may award attorneys' fees as a matter of law when testimony

11

"is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon"). In *Ragsdale*, the supreme court acknowledged that an attorneys' fee award ordinarily rests in the sound discretion of the trial court and that the testimony of an interested witness, such as an attorney's evidence regarding the reasonableness of fees, generally does no more than raise a fact issue for the trier of fact. *Id.* at 881-82. But the supreme court also noted that, when that evidence is "not contradicted by any other witness or attendant circumstances," it can be taken as true as a matter of law, permitting a reviewing court to render judgment in the uncontroverted amount. *Id.* (reversing appellate court's remand of case to trial court for new trial on attorneys' fees and rendering judgment in amount supported by uncontroverted evidence of reasonable attorneys' fees). Thus, an appellate court may, but is not required, to render judgment in the amount of attorneys' fees supported by uncontroverted evidence of reasonable fees. *See id.* at 882 (holding that trial court, as trier of fact, may under certain circumstances award attorneys' fees as a matter of law, and rendering judgment in amount supported by uncontroverted evidence submitted to trial court).

In addressing the determination of whether to render judgment or remand to the trier of fact, the supreme court in *Smith v. Patrick Y.W. Tam Trust* observed that *Ragsdale* "recognized that its rule would not apply whenever attorneys' fees testimony is undisputed." 296 S.W.3d 545, 547 (Tex. 2009). The supreme court cautioned that the factfinder also had to consider the attendant circumstances, including the amount of money involved and the results obtained, among other factors. *Id.* (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)). In *Smith*, the court of appeals had reversed the trial court's $7,500 award of attorneys' fees and rendered judgment for $47,438.75 instead, holding that the

trial court abused its discretion in awarding less than the unchallenged evidence presented by the Trust of the amount, nature, and necessity of those fees. *Id.* at 547. The supreme court reversed the court of appeals, noting that the Trust had "sought over $200,000 in damages, but the jury awarded only $65,000" and that the fee, "though supported by uncontradicted testimony, was unreasonable in light of the amount involved and the results obtained, and in the absence of evidence that such fees were warranted due to circumstances unique to this case." *Id.* at 548. The supreme court remanded the fees issue to the trial court for a new trial on attorneys' fees, observing that "[o]n retrial, the evidence may support a similar fee award, but that is a matter within the jury's purview." *Id.*

In the present case, we decline to render judgment based on LBJ Venture's evidence of attorneys' fees, even though uncontradicted by Kolaj. LBJ Venture sought over $900,000 based on its incorrect interpretation of unambiguous contract provisions in the lease. At trial, Kolaj did not contest liability and conceded such in response to LBJ Venture's motion for partial summary judgment. The trial court awarded LBJ Venture approximately one-tenth of the damages it sought. These attendant circumstances may serve to contradict the evidence of the reasonableness of the fees LBJ Venture seeks, and we leave it to the trier of fact to exercise its discretion to determine what amount of attorneys' fees constitutes the "reasonable sum" to which LBJ Venture is entitled under section 12.01 of the lease. Thus, while the trial court abused its discretion by failing to award any fees, we leave the determination of the amount of the fee award to the trier of fact and remand that part of the case to the trial court for a new trial. *See Abira Med. Labs. LLC v. OMH Healthedge Holdings, Inc.*, No. 03-22-00176-CV, 2024 WL 558835, at *4 (Tex. App.—Austin Feb. 13, 2024, pet. denied) (mem. op.) (holding that trial court

13

erred by failing to award attorneys' fees to prevailing party and remanding that portion of case to trial court for calculation of proper award of attorneys' fees).

## CONCLUSION

We affirm the portion of the judgment awarding LBJ Venture actual damages and pre- and post-judgment interest. We reverse the portion of the judgment denying LBJ Venture an award of attorneys' fees and remand that portion of the case for a determination of the reasonable sum of attorneys' fees and costs pursuant to section 12.01 of the lease.

_____

Karin Crump, Justice

Before Justices Theofanis, Crump, and Ellis

Affirmed in Part; Reversed and Remanded in Part

Filed:   March 6, 2025